476 STATE *v.* HAWKINS. [Sup. Ct.

[Filed February 11, 1890.]

# STATE OF OREGON, Respondent, *v.* W. E. HAWKINS, Appellant.

CRIMINAL LAW—APPLICATION TO POSTPONE—AFFIDAVIT—INSUFFICIENT.—An affidavit made in support of a motion to postpone the trial of a criminal case until the next term of court, examined and held insufficient.

TRIAL—CRIMINAL LAW—ARGUMENT OF COUNSEL—OBJECTION.—In a criminal trial where the defendant offers himself as a witness and omits to testify concerning one fact which the State deemed material, and in the concluding argument counsel for the State mentioned such omission, but no objection was made to such argument at the time; *held*, that if counsel for the State transcended the proper bounds of debate before the jury, it was the province of defendant's counsel to take an objection at the very time of the utterance of the offensive words, and to take the ruling of the court upon their propriety. If the objection had been promptly taken and counsel had desisted, there would have been no available error; or, if an objection had been made and the court had ruled the counsel was not in order, the defendant would have had no cause for an exception.

INSTRUCTIONS—SEEKING DECEASED FOR A QUARREL OR AFFRAY—SELF DEFENSE—APPEARANCES.—An instruction by which the jury was informed that if they found beyond a reasonable doubt that the prisoner was then seeking O., the deceased, to provoke a quarrel with him or with the intent of having an affray with him, and a difficulty did ensue, he could not, without some proof of a change of conduct or action, excuse the killing of O. on the ground that he believed that O. was attempting to draw a weapon with which to assault the accused; *held*, not erroneous.

TRIAL—INSTRUCTIONS—JURY'S DELIBERATIONS.—An instruction by which the cour told the jury that he need not admonish this intelligent jury that it is important to the ends of justice and to secure public respect for our judicial tribunals that juries agree upon verdicts in cases submitted to them, so that causes may be determined and new trials and delays of justice avoided; *held*, not erroneous.

PRACTICE—PREJUDICE CAUSED BY NEWSPAPER ARTICLES—CHANGE OF PLACE OF TRIAL.—If the publication of articles in a newspaper cause such prejudice in the public mind as to preclude a fair and impartial trial in the county where the action is pending, the defendant's remedy is a motion to change the place of trial for that reason, and not a motion to postpone the trial.

PER STRAHAN, J., ON PETITION FOR RE-HEARING.—Filed March 10, 1890.

HOMICIDE—PROVOKING QUARREL OR DIFFICULTY—SELF DEFENSE.—A party has not the right to arm himself and seek his adversary and provoke a quarrel or difficulty with him and take advantage of it, and justify the killing of such party, on the ground that he acted in self-defense.

HOMICIDE—SELF DEFENSE.—The right of self-defense does not imply the right of attack, and will not avail in any case where the difficulty was induced by the party himself.

APPEAL from the circuit court for Marion county.

The defendant was indicted for the crime of murder in the first degree. A trial resulted in his conviction of murder in the second degree, and having been sentenced to the penitentiary during his natural life, he has brought this appeal. The points relied upon to reverse the judgment will be noticed in the opinion.

*W. M. Kaiser, S. L. Hayden* and *Tilmon Ford,* for Appellant.

*H. H. Hewitt* and *E. B. Williams,* for the State.

STRAHAN, J.—The first point made by the appellant's counsel is, that the court below erred in overruling the motion for the continuance of the cause for the term. The killing took place on the first day of May, 1889; on the thirteenth day of June following the defendant was indicted by the grand jury, and on the seventeenth day of June, 1889, he filed his motion for a postponement of the trial of the cause until the next regular term of the court, for the reason one M. B. Goldstien, a witness whose evidence was alleged to be material, could not then be procured at that term of court. The court declined to postpone the cause for the term, but did postpone it until the fifteenth day of July, 1889, to which time the court adjourned, for the purposes of the trial. The residence of the absent witness was Portland, but he was the manager of an itinerant theatrical troupe, which was performing in Washington Territory at the time.

The affidavit recites: "I am informed and believe that said witness will swear that said deceased was armed with a pistol, and that he heard the report of the same and saw the flash of the powder therefrom, when the deceased fired the same at me, which occurred at the time of my effort to defend myself from said attack of said deceased; and that the said witness testified before the coroner's jury as the State's witness. He was also subpenæd by the State, attended the preliminary examination, but gave no testimony at that time; he was subpenæd as a witness before the grand jury at the present term of this court, and gave testimony concerning said difficulty," and that no effort has been made by the State's counsel to detain said Goldstein as a witness in said cause. This affidavit is silent as to whether the same facts could not be proven by other witnesses; but on the fifteenth day of July, 1889, the application was renewed and an additional affidavit was

submitted by one of the defendant's counsel, in which he says that he knows of no other witness by whom the important facts stated in the affidavit of the defendant heretofore filed can be so clearly and satisfactorily established and proven. The killing occurred on the street in the city of Salem, and was witnessed by a number of people, and the affidavit fails to disclose that Goldstein possessed any different means of knowledge from all others who witnessed the unfortunate encounter. The affidavit fails to disclose how or when the affiant acquired a knowledge of what Goldstein would swear to, nor does it appear why he was not promptly subpœnæd before he left the city, after testifying before the grand jury, and finally the inference is made very strong by Mr. Ford's affidavit that the same facts could be proven by other witnesses, though not so clearly and satisfactorily. It must be observed that if the deceased was armed with a pistol at the time of the killing, and made an attack on the defendant with it, and any witness knew the fact, his testimony on that subject would be neither dubious or uncertain. It would be a fact about which there could be no doubt.

Looking at the entire tenor of these affidavits, we are unable to say the trial court erred in overruling the appellant's application to postpone the trial. In such cases the trial courts exercise a large discretion. Ordinarily that court can determine better than we can whether or not the ends of justice will be promoted by an adjournment; still, having a supervisory power over the proceedings of the circuit court, if we could see it had abused its discretion to the injury of the appellant, we would not hesitate to reverse. But in this case the fact does not appear. The appellant's application was too weak and uncertain to require the circuit court to allow a continuance. Neither are the allusions in the affidavits to what the newspapers contained sufficient to have required the court give a continuance. If the newspaper articles had been of so serious and inflammatory a character as to actually cause so deep a prejudice in the public mind as to preclude a fair and

impartial trial in the county, the proper motion was
not for a postponement, but for a change of the place of
trial.    Hill's Code, § 1222.

It appears from the record that during the progress of
the trial the State introduced testimony tending to show
that a person was seen in the vicinity of the house where
the deceased was stopping on the occasion of his visit to
Salem, on the evening of the homicide, and during
the trial of said cause the defendant offered himself
as a witness in his own behalf, and made no allusion to this
evidence so introduced by the State.    During the closing
argument made on behalf of the State by Hon. Richard
Williams, he commented on this circumstance, saying
that he did not know and did not ask the jury to believe
that the person seen in the vicinity of where the deceased
was stopping was the defendant; but that the defendant
had been on the witness stand, had an opportunity to deny
the same, but didn't do so.    No objection was made to this
remark at the time of its utterance, but after the argument
was closed, the defendant's counsel asked the court to
instruct the jury as follows:    "The statute of this State,
in allowing a party to testify in his own behalf in a crimi-
nal cause, expressly provides that his failure to do so
shall not create any presumption against him, and I caution
you against the comments of the counsel for the State, as
they had no right to speak of the failure of the defendant
to testify on any point or circumstance of the case."    This
instruction was refused, apparently for the reason that it
was not submitted to the court within the time prescribed
by a rule of court.    This rule requires all instructions
desired by counsel to be submitted to the court before the
last argument commences.    Conceding without deciding
that when a defendant in a criminal case offers himself as
a witness in his own behalf, is silent as to some fact
appearing in the case against him, that no unfavorable
inferences can be drawn against him on account of such
silence, still I think in this case counsel for appellant did
not raise the question at the proper time or in the proper

manner. If the counsel for State transcended the proper bounds of discussion it was the province of defendant's counsel to take an objection at the very time of the utterance of the objectionable words, and to take the ruling of the court at the time upon their propriety. Suppose that objections had been promptly made to the observations of counsel by the State, and he had immediately desisted, there would have been no available error. *Worley* v. *Moore*, 97 Ind. 15. Or, if objection had been made, and the court had ruled that counsel was not in order, the defendant would have had no cause of exception. But it is claimed that in a spirit of abundant caution the court ought to have given the instruction asked by the defendant. In any view of the subject I do not think the remark of counsel was of such a character as to·call for special instructions from the court. The subject was barely alluded to by counsel, and where no objection was made at the time, and where it is apparent such remark could in no manner have misled or influenced the jury, I think it would be going too far to reverse the judgment on account of or by reason of such remark. This view of the subject renders it unnecessary to consider or determine the applicability or effect of the rule of court referred to in the record. It may be observed generally, however, that it is within the discretion of the trial court to promulgate and enforce all such rules for tho speedy and convenient dispatch of business as are not inconsistent with law.

The court in effect gave the jury the following instruction, to which an exception was duly taken: "That if the jury found from the evidence, beyond a reasonable doubt, that the prisoner was then seeking to meet Ogle to provoke a quarrel with him, or with intent of having an affray with him, and a difficulty did ensue, he cannot without some proof of a change of conduct or action, excuse the killing of Ogle upon the ground that he believed that Ogle was attempting to draw a weapon with which to assault the defendant." Counsel for the defendant now

insist that the giving of this instruction was error, but he has cited no authority to support his contention. I do not think, under the facts assumed in this instruction, that the doctrine of apparent danger from the deceased can be invoked by the prisoner. He was armed, as the evidence fully shows, was seeking the deceased for the purpose of provoking a quarrel with deceased, or with the intent of having an affray with him. It must be supposed that the deceased was able to judge of such hostile purpose. To say under those circumstances that the defendant might act upon alleged appearances and draw his pistol and shoot the deceased would be equivalent to allowing any desperado to go and seek his victim, and as soon as appearances were sufficiently favorable, to draw his gun and murder him. This would not be self-defense, but murder. When a man is armed and seeks another for an affray or an altercation, the law will not permit him to provoke and urge on the difficulty to a point where there is an appearance of an attempt to use weapons, and then justify the aggressor in taking of life simply on the ground of apparent danger. In such case he is the aggressor, and the active cause of the danger which menaces him, and he must abide by that condition of things which his own lawless conduct has produced.

The court further charged the jury: ' I need not admonish this intelligent jury that it is important to the ends of justice, and to secure public respect for our judicial tribunals, that juries agree upon verdicts in cases submitted to them, so that causes may be determined and new trials and delays of justice avoided." An instruction in relation of the duty of the jury to agree upon a verdict couched in stronger and more imperative language than the one now complained of, was before this court in *State v. Saunders*, 14 Or. 300, and it was held not to be erroneous. Such instructions announce no principles of law further than to impress upon the minds of jurors the duty of considering the case in all of its bearings fairly and without prejudice, and to endeavor to reach a just conclusion.

XVIII. OR.—31.

In *State* v. *Saunders, supra,* the court, after remarking the effect of disagreements of juries at common law, and that under that, system juries were kept together until they did agree, and how such rule had been mitigated in the United States, said the jury would have to remain together and could not separate until they agreed upon a verdict and brought it into court. This court, in disposing of an exception to this charge, said; "It was proper for the court to inform the jury respecting their duty; advise them how they should consider the matter before them, and the course to pursue in reaching a conclusion. Nor should the concluding remark in the charge be construed as any determination to keep them together until they had agreed, or an indication that the case in the mind of the court was so plain that they would not be justified in failing to agree." No intelligent or conscientious juror could be misled by such an admonition. He understands the motive of the court not to be to control or coerce his judg ment contrary to his conscientious convictions, or to induce him to yield to the judgment of his fellows without the fullest comparison of all of the facts. It is impossible to see in what manner such advice to the jury could have injured the defendant. The claim that its tendency was to make weak jurors yield their judgments to the majority or to those having stronger wills, cannot affect the question if it were true, which is not conceded for the reason that those considerations would be just as likely to operate favorably as unfavorably to the prisoner. After the most careful consideration of this case which I have been able to give it, I am unable to see any error in this record prejudicial to the appellant. So far as the record disclosed the proceedings of the court below, every step in the progress of the trial seems to have been carefully taken with a view of securing, to the fullest extent, a fair and impartial trial.

Having reached the conclusion that there is no error in the record, we have no discretion, but must affirm the judgment.

[Filed March 10, 1890.]

STRAHAN, J., on petition for re-hearing.—Appellant's counsel have filed a petition for re-hearing in which they mainly rely upon the alleged error in the trial court in giving the instruction set out in the opinion. That instruction told the jury that, under the circumstances therein enumerated, the defendant could not, without some proof of change of conduct or action, excuse the killing of Ogle upon the ground that he believed that Ogle was attempting to draw a weapon with which to defend himself or assault the prisoner. This instruction appears to have been copied almost literally from State v. Neeley, 20 Iowa, 108. It was conceded upon the argument that at the time of the meeting between Hawkins and Ogle, which resulted in Ogle's death, the parties were not on friendly terms, and when they met, Hawkins addressed him by saying, "I understand you have been lying about me." Ogle then faced Hawkins and put his hand down in his pocket. Some other words were also used. Hawkins states that Ogle said when he put his hand in his pocket, "I'll settle it now with you, you d—d son of a b—h." He says when he saw this he threw his hand under his coat, got hold of his pistol and fired. I think the evidence tended to prove that Hawkins armed himself and sought Ogle with the intent of provoking a difficulty that he expected might be deadly. If not, why did he arm himself, and if he did not intend to precipitate a difficulty why did he address Ogle in the offen- sive manner in which he says he did? He must have known that it was highly probable that Ogle might resent such an offensive salutation, and it seems he was ready with his pistol concealed under his coat to carry into effect a previously formed design to kill him. That is the light in which the jury might have regarded both the language and conduct of the defendant.

After arming himself and seeking Ogle, and addressing him in the offensive manner he says he did in his own evi- dence, could he have had but one purpose or expected but

one result? Those words, if not designed to bring on a difficulty, were well chosen for that purpose. The defendant, in his preparation in seeking Ogle, and in addressing him in the manner he did, was not without fault. The jury had the right to weigh these circumstances and to consider the relations of the parties at the time of the homicide. In this case Hawkins was the aggressor from the beginning of the transaction to the termination of the fatal affray. He armed himself with a deadly weapon and sought his adversary with the intent to have a difficulty with him. He did not salute Ogle in a friendly manner or in friendly language; on the contrary, he used those words which he was bound to know might move Ogle to some angry retort or hostile demonstration. When Ogle put his hand in his pocket, where there was no weapon except a common pocket knife, the defendant shot him down, and his counsel call that self-defense, and they contend that Hawkins' conduct did not so far put him in the wrong as to deprive him of the right to justify the killing of Ogle on the ground that he acted in self-defense. The charge excepted to must be considered in the light of the facts before the court. Had it been shown in evidence that the defendant approached Ogle for a lawful or legitimate purpese, in a peaceable manner, and used no words calculated or de-signed to precipitate a difficulty, another and quite a different question would have been presented, and upon which it is not necessary to express an opinion in this case.

Counsel for appellant present a number of cases in support of their petition for a re-hearing, and which were not cited or considered at the argument, and which they think sustain their contention that the instruction excepted to was error. *Stewart* v. *The State*, 1 Ohio St. 66, is a well-considered case, in which the opinion of the court was delivered by that eminent jurist, Judge Thurman, but it does not sustain appellant's contention. A single point in the head note sufficiently indicates the effect of the opinion: "Where the slayer seeks and provokes an assault upon himself in order to have a pretext for stabbing

his adversary, and does, upon being assaulted, stab and kill him, such killing is not excusable homicide in self-defense." The authority of this case is with the ruling of the court below. The case of *Williams* v. *The State*, 47 Ills. 376, belongs to the same category. That case holds that while a man threatened with danger must determine from appearances, and the actual state of things surrounding him, as to the necessity of resorting to self-defense, and if he acts from reasonable and honest convictions he will not be held responsible criminally for a mistake as to the extent of the actual danger where other judicious men would have been alike mistaken; and at the same time he has not the right to provoke a quarrel and take advantage of it and then justify the killing of the party with whom he provoked the quarrel. In *Atkins* v. *The State*, 16 Ark. 566, the point under discussion was not directly presented. The court instructed thus: "That if the jury believe from the testimony that Atkins, the prisoner, went to Wicker's house on the night of the homicide *for the purpose of a difficulty with Wicker*, and in that difficulty killed him with a deadly weapon, he is guilty of murder." This was held to be error, and properly so. In passing on this question the court uses this guarded language: "If the prisoner went to the house of Wicker with a hostile purpose or for the purpose of getting into a difficulty with him, and if he used a deadly weapon in the fight, these were facts to be considered by the jury in passing upon his guilt or innocence or in determining the grade of his offense, but these alone, regardless of all other circumstances attending the difficulty, would not necessarily make him guilty of murder." It will be seen that the doctrine of self-defense was not presented. It does not appear that the slayer was assailed or in any way molested by the deceased; it was the grade of the crime that was the point of the inquiry.

One fatal objection to the instruction was, it declared the legal effect of certain portions of the evidence, which belonged to the jury, and necessarily excluded from their consideration other facts proper for their consideration.

*Colton* v. *The State*, 31 Miss. 504, is much relied upon by appellant; and it must be conceded that some of the language used in the opinion might seem to justify this contention, but the real point arose on an exception to an instruction which was in these words: "That if the accused was armed with a deadly weapon, and sought and brought about the difficulty with the deceased, and killed the deceased in the difficulty with such a weapon, he is guilty of murder." It will be seen that this is substantially the same instruction given in *Atkins* v. *The State, supra*, and it might properly have been held erroneous for the same reasons. Nor did the question of self-defense necessarily arise upon the record. It did not appear in that case that the deceased assailed his slayer or even used force in his own defense. Colton walked backwards across the street and Smith, the deceased, walked slowly after him till he was shot. *Regina* v. *Smith*, 34 English Com. Law, 666, is also relied upon by counsel. The syllabus of that case is favorable to the appellant; but neither the facts recite nor the opinion of the court contains anything upon which such a statement of law could be properly based. *The State* v. *Harrell*, 97 Mo. 105, is another case cited by appellant. The question arose upon the following instruction given to the jury: "The court instructs the jury that if you believe from the evidence in this case that the defendant sought or invited the difficulty in which Ring was killed, or that he provoked or commenced or brought it on by any wilful act of his own, or that he voluntarily or of his own free will engaged in it, then, and in that case, you are not authorized to acquit him on the ground of self-defense. The right of self-defense does not avail as a defense in any case when the difficulty is sought for and induced by the party by any wilful act of his own, or where he voluntarily or of his own free will enters into it." The opinion says: "This instruction is erroneous in that it cuts off the defendent from a *limited or qualified right of self-defense*, though actuated by no felonious intent, provided he *'brought on the difficulty.'*" This

learned opinion is written with rather too much energy to be safely followed in all particulars.    But after citing numerous cases, it says:  ''Those cases, as well as all carefully considered cases in other jurisdictions, and all the text writers, recognize as sound and wholesome law the principle that if a man brings on a difficulty *with the purpose of wreaking his malice by slaying his adversary* or doing *him great bodily harm,* and actuated by such felonious purpose, he does the homicidal act, then there is no self-defense in the case, and he is guilty of murder in the first degree, and nothing less.''

· These are all the cases upon which counsel rely in support of their petition for a re-hearing.    A few cases in support of the opinion already announced may be cited on the particular point under discussion.    The case of *The State* v. *Benham,* 23 Iowa, 154, is a well considered case in which the opinion of the court was delivered by that distinguished jurist, Judge Dillon.    He said:  ''Nor can the defendant get the benefit of the plea of self-defense, if he sought the deceased with a view to provoke a difficulty or to bring on a quarrel.  *State* v. *Neeley,* 20 Iowa, 108.    The law regards human life as the most sacred of all interests committed to its protection, and there can be no successful setting up of self-defense unless the necessity of taking life is actual, present, urgent; unless, in a word, the taking of his adversary's life is the only reasonable resort of the party to save his own life or his person from dreadful harm or severe calamity felonious in its character.''    *The State* v. *Rogers,* 18 Kan. 78, is to the same effect.    *The State* v. *Johnson,* 76 Mo. 121, belongs to the same class.    It was there held that ''the right of self-defense does not imply the right of attack, and will not avail in any case when the difficulty was induced by the party himself.''    It must not be overlooked that the instruction excepted to did not undertake to define the grade of the offense, but left that matter entirely in the hands of the jury, where it properly belonged.

The re-hearing must therefore be denied.