## JOHNSON *v*. STATE.

### Opinion delivered July 1, 1893.

1. *Homicide—Self defense—Impending danger:*
   An instruction that a homicide was justifiable if deceased was making an attack on defendant under circumstances indicating an intention to take away his life or to do him great bodily injury, or if it so appeared to defendant as a reasonable man and the circumstances were such as to excite the fears of a reasonable man, is too broad and unqualified; it must appear that the danger is not only impending but so pressing and urgent as to render the killing necessary.

2. *Self defense—Right of assailant to withdraw.*
   An instruction is erroneous which excludes the right of self defense if defendant was the assailant, though he may afterwards have abandoned the conflict in good faith and struck the fatal blow only to save his life or prevent great bodily harm.

3. *Protection of officer—When forfeited.*
   Where defendant's wrongful acts brought on a difficulty, the fact that he was an officer of the peace, and in the course of the difficulty attempted to arrest deceased, will not avail as a defense.

Appeal from Faulkner Circuit Court.

ROBERT J. LEA, Judge.

*J. H. Harrod* for appellant.

1. The instruction given for the State was erroneous. The question of the *degree* of the offense was for the jury to determine. It was not accompanied by an explanation of the degrees of homicide, and was not so

guarded as to allow the jury to infer an abandonment of the purpose to kill, from the circumstances of the homicide. 29 Ark. 248. It was erroneous because it was based upon and recited facts not in evidence. 36 Ark. 127 ; 54 *id*. 336.

2. The ninth instruction should have been given as asked by defendant, and its modification was error. It ignored entirely the question of abandonment of the difficulty in good faith.

3. The tenth instruction should have been given. 52 Ark. 45.

4. The modification of the twelfth was error and prejudicial.

5. It was error to modify the fourteenth and especially so to modify it verbally. 51 Ark. 177.

6. The verdict is not sustained by the evidence.

*James P. Clarke,* Attorney General, for appellee.

1. There is no prejudicial error in the instruction given for the State. 49 Ark. 543 ; 54 *id*. 4.

2. It is true the ninth instruction is open to criticism because as modified it does set forth the theory of abandonment of the conflict by defendant in good faith ; but the instruction was predicated upon another phase, and the court modified so that it would correctly state the law applicable to that phase. As the court was not asked to instruct on the theory of abandonment of the attack, the objection fails. The court gave sec. 1553, Mansfield's Digest.

3. The fourteenth instruction is not very clear in itself, and it may be conceded that it is not very accurate as a declaration of law. The proposition asserted had no bearing upon the issue before the jury. Appellant's plea was self defense—not that he was an officer attempting to make an arrest. If incorrect, the jury were not misled. Thompson, Charging the Jury, sec. 123 ; 22 Ark. 207.

HUGHES, J.  The appellant, J. S. Johnson, was convicted of murder in the second degree for the killing of one Williams, and has appealed to this court.  The killing was not denied, but the defendant contends that it was done in self defense.  The defendant was, at the time of the killing, the constable of the township in which the killing occurred, and contends that, at the time he killed the deceased, the deceased was advancing upon him with a drawn stick and striking at him, because the defendant, as constable, had told him he would arrest him, and had told him to consider himself under arrest for an assault, which he contends the deceased had made upon Manning, a brother-in-law of the defendant, to prevent the said Manning from taking from the possession of the deceased a plow that belonged to the defendant, the possession of which he contends the deceased had taken without right and without his consent.

So much of the evidence only as will throw light upon the declarations of law given and refused by the court at the trial, will be stated in substance as it appears in the abstract of appellant, which is admitted by the State to be correct.

Williams, the deceased, was a share-cropper on the place of J. F. Johnson, the father of the appellant, whose contract with Williams was that he would furnish him with team and tools to cultivate his land.  J. S. Johnson, the appellant, was also cultivating land on the farm, and owned his tools.  The deceased had taken the defendant's plow without the defendant's consent.  The defendant had gone to the deceased and got his plow, and informed the deceased that he would need the plow for several days.  On returning to his field early the next morning, the defendant found that his plow had been taken away, and thought, from tracks he saw, that the deceased had taken it again.  He returned to his father's house and told him that the deceased had his

plow, and requested his father to get the plow, reminding him that it was his duty to furnish the deceased with tools. The father of the defendant thereupon requested his son-in-law, Manning, to go and get the plow, saying that the deceased was friendly to Manning. Manning, who was on a visit with his wife and child to his father-in-law, and was about ready to start home, said he would not go if there was to be any trouble, but, being assured by the defendant that there would be no trouble upon his part, consented to and did go to the field where the deceased was plowing, which was perhaps about one hundred yards from the residence of J. F. Johnson. The defendant followed behind Manning, and there is evidence tending to show that Wash Johnson, the brother of the defendant, also went along with them.

They approached the deceased as he came to the end of a cotton row, in which he was plowing, as it appears, with the defendant's plow. They spoke to the deceased, saying "Good morning;" and Manning said, "You are plowing her out," to which the deceased replied, "Yes." Manning then said to Williams that Mr. Johnson sent him over to get the plow, and to say to him that he would get him another plow, if he wanted another. Williams replied that he would not let the plow go till he got another. Manning thereupon stepped forward, according to the testimony of Williams' wife, who states that she was present, and said, "My name is Manning, don't you know me," and, as he said this, stooped to unhitch the horse of the deceased from the plow, and Williams then drew a stick, and, Mrs. Williams says, "then Jim and Wash Johnson drew their pistols. (The defendant was called, familiarly, "Jim Johnson.") . Manning picked up the plow, and Jim said to him, 'Put down the single tree,' and Manning did it. Manning then started off with the plow, and the defendant told

him to put down the plow and take the stick away from Williams. Jim said to Mr. Williams, 'Consider yourself under arrest;' and Mr. Williams said, 'I will not be arrested by you;' and then Jim, the defendant, fired."

Mrs. Williams, who was the only person present, save the deceased, Manning, Jim and Wash Johnson, says that when the second shot was fired, her husband, the deceased, was falling, and was upon the ground when the last shot was fired, and that he expired immediately; that at the first shot they were ten feet apart.

It appeared that there had previously been some bad feeling between the defendant and Williams, the deceased, and that the defendant, some time previous to the killing, had been told that Williams had threatened his life, and that Johnson had said that he did not want any trouble and would mind his business, but that he was on his own premises, and did not propose to be run off.

The defendant, in his testimony, states that when Manning stepped up to the plow next to the horse, "Williams picked up a stick and stepped toward Manning," that he told Williams to lay the stick down, that he was not going to have any trouble, and for him to behave himself. He said: "I told him if he did not put his stick down, I would arrest him. He said, 'You will have to call in some of your neighbors to help you.' I told him again, if he did not lay down his stick, I would arrest him. He started toward me with his stick drawn, and advanced toward me, and I told him to stop, but still he came on. He came very close, striking at me with his stick, when I shot the first time. He struck again, and I shot the second time. I was preparing to shoot again when I saw he was hit. * * * I was constable of the township, and carried my pistol all the time because I thought I had a right to do so. My

brother Wash did not go over with Manning and myself."

There was some testimony tending to contradict Mrs. Williams, and to show that she was not present when the shooting occurred, but that she came up immediately afterwards.

There was evidence tending to show that the stick which Williams had at the time he was shot was about as long as a man's arm, about three inches wide at one end, about one and a half at the other and about one inch thick, "of heart pine and good weight," and a witness said, "I think it would have weighed four or five pounds. I had hold of the stick. I think a fatal blow could be given with it in the hands of a man with ordinary strength."

The court gave the jury the following instruction at the instance of the attorney for the State, over the objection of the defendant, to which he excepted, to-wit:

"The jury is instructed that a man cannot bring about a quarrel or rencounter and then justify himself under the law of self defense, unless he in good faith endeavored to abandon the difficulty and did all within his power consistent with his safety to avert the necessity of killing before the mortal injury was inflicted, and if the jury believes from the evidence that the defendant, being armed with a deadly weapon, went either alone or with Thad Manning and Wash Johnson, or either of them, to the field where the deceased Williams was plowing, for the purpose of getting a plow, intending, if Williams would not give it up to him, to take it by force, and, if Williams resisted, to kill him, and that Williams did resist, and the defendant shot and killed him, then the defendant cannot justify himself under the law of self defense, and such killing would be murder in the first degree, unless he had in good faith abandoned the affray and done all in his power, consistent with his

safety, to avoid the danger and avert the necessity of the killing before the mortal injury was given.

This instruction is not substantially defective, and there is not reversible error in it.

The court refused the third, the sixth and seventh instructions asked for by the defendant, and refused the eighth as asked, but modified it and gave it as modified, to all which the defendant excepted. We do not discuss these instructions, because we think the law was sufficiently declared by the court, as to matters they were designed to cover, in other instructions that were given.

Exceptions were reserved to the court's refusal to give the ninth instruction asked for by the defendant without modification, and to the court's modification of it and giving it as modified. 1. As to right of self defense.

The instruction as requested was as follows : "The defendant seeks to justify the killing on the ground that the deceased was making an attack on him under such circumstances as indicated an intention to take away his life or do him great bodily injury, and that whether such harm was intended or not, if it so appeared to the defendant as a reasonable man at the time, and if the circumstances were such at the time as to excite the fears of a reasonable man, and the jury believe that the defendant really and in good faith acted under the influence of such fear, and not in a spirit of revenge, then the killing would be justifiable."

The court modified the instruction by adding the following : " Provided he was not the assailant or did not bring on the difficulty and had done all within his power consistent with his safety to avoid the danger and to avert the necessity of the killing when the mortal injury was given." And gave the instruction as so modified.

This instruction, as was said of a similar instruction in *Palmore* v. *State*, 29 Ark. 248, was " too broad

and unqualified." To excuse homicide it must appear that the danger is not only impending, but so pressing and urgent as to render the killing necessary. This idea was left out of the instruction as asked, but this was favorable to the defendant, and as to this he could not complain.

2. Right of assailant to withdraw.  But the modification is vicious, and prejudical to the defendant. It is true as a legal proposition that where a defendant brings upon himself a difficulty, in which he continues until he brings upon himself a necessity to kill, the law will not hold him guiltless, "yet it is not to be doubted that a person accused of crime may show in justification that, although he brought upon himself an imminent danger, he, in the presence of that necessity, changed his mind and conduct, and honestly endeavored to escape from it, but could not without striking the mortal blow." There should always be left room for repentance and the abandonment of an evil or unlawful purpose. *People* v. *Simons*, 60 Cal. 72. "This space for repentance is always open," says 1 Bishop, Cr. Law, sec. 871. "When, therefore, a combatant, to abandon the conflict and not to gain fresh strength or a new advantage, withdraws as far as he can, but the other will pursue him, if the taking of life becomes inevitable to save life, he may lawfully kill his pursuer. But a mere colorable withdrawal avails nothing." *Id.* n. 1; 1 Hale, P. C. 479, 480.

The modification to this instruction excludes the right of self defense, where the defendant is the assailant, though he abandons the conflict in good faith, and strikes the fatal blow thereafter, only to save his own life or to prevent great bodily harm being inflicted upon him.

The instruction told the jury, in effect, that if the defendant was the assailant, that fact cut him off from the right of self defense, though he afterwards abandoned

the conflict in good faith, and did not kill till forced to do so by an actual, impending and pressing necessity, or by the appearance of such a necessity which was sufficient to excite the fears of a reasonable man that his life was in danger, or that he was in danger of great bodily harm, and that there was no escape from the danger but by slaying his antagonist.

For the error in giving this instruction, the judgment must be reversed.

The tenth instruction is obnoxious to the objection to the ninth before it was modified. There was no error in refusing it.

The modification of the twelfth instruction was not prejudicial.

The fourteenth instruction as modified involves some close questions of law upon which the decisions are not harmonious, but as a majority of the court are of the opinion that the theory sought to be embodied in said instruction before it was modified—that the defendant was acting in his official character in seeking to preserve the peace when he fired the fatal shot, or that he killed the defendant in attempting to arrest him for a breach of the peace—has support in the evidence, we refrain from discussing it. That instruction as asked is as follows: "You are instructed that if you find from the evidence that the defendant was a constable, and the deceased was making an assault upon Manning in defendant's presence, the defendant had the right to arrest the deceased."

3. When protection of officer forfeited.

The court refused this instruction as asked, and modified the same by adding at the end thereof the following:

"Provided deceased was not justifiable in the assault; and he would be justifiable in the assault if necessary to prevent Manning from taking from him the plow without his consent." The defendant excepted to

the refusal of his instruction as asked, and excepted to the above modification and giving the same as modified.

When the court came to instruct the jury, after reading the above instructions as above modified, it verbally added the following statement to the jury : "Provided the deceased used no more force than was necessary to repel the unlawful force used against him."

To this verbal statement of the court the defendant at the time excepted.

A majority of the judges think the instruction was wrong as asked, and that the modification neutralized it, and that as modified it was harmless. It is the opinion of the majority of the court that if the wrongful acts or conduct of the defendant brought on the difficulty, he could not take shelter behind his character as an officer, but that he stood as any other person, without the right to claim anything in that difficulty by reason of the fact that he was an officer.

The sixteenth instruction as modified is not prejudicial, and there was no error in giving it.

For the error in giving the ninth instruction as modified, the judgment is reversed, and the cause is remanded for a new trial.