**THE PEOPLE, Plaintiff**

v.

**ALEXANDER HENDRICKS, Defendant**

September Term, 1929

No. 143

District Court of the Virgin Islands

Christiansted Sub-Judicial District
St. Croix

October 30, 1929

WILLIAMS, *Judge*

In view of the zeal and insistency shown by counsel for defendant at the hearing on the motion for a new trial, I feel it is not amiss to record my views on the question presented. It is conceded by the defendant that both Alexander Hendricks and Joseph Knight are roustabouts, or what is commonly called in this community vagabonds. This concession is sustained by their record in the courts. While on a spree on the 2nd October they got into an altercation,

which had been superinduced apparently by some previous difficulty. It seems that Hendricks and another one of the "spree-ers" had been, a short time before, in some altercation, and, as a result thereof, Hendricks struck or slapped Knight, and the matter was followed up by clinching, apparently through the advances of Hendricks. Shortly thereafter they fell to the ground with Knight on top. While Hendricks claims that Knight had his knee in his bowels and his hand on his throat, and, therefore, he was helpless either to extricate himself or to signal that he had abandoned the fight, I do not believe that he was in such a helpless condition. He at least had one hand free with which to use the knife that he already had in his hands, and with which to get one from his pocket, if it were not actually in his hands when he fell. I am unable to say whether or not he had the knife in his hand when he started the disturbance, or got it out during the squabble, but, at any rate, he pulled out a knife, and, while the said Knight was upon him, stabbed him in the back, the knife striking one of the vertebra, thereby preventing the knife from entering the body of the said Knight, which, if it had entered, would probably have penetrated his kidney and caused death, as the doctor testified. In my judgment, before the assailant, Hendricks, would be justified in using a knife he should have retreated, or, if he was unable to retreat, he should have made some signal of surrender or abandonment of the attack. Assuming that he could not have used his mouth as a signal, as he said, he certainly had one hand free, which would have enabled him to have made a signal to this effect. I do not conceive that every person who happens to be down for the moment is conquered. I think the books have many cases in them showing that a person who may apparently be conquered, for the moment, concludes the quarrel or fight by seriously injuring or killing his opponent. As long as advantage of him was not gotten by

242

foul means, or maintained by unfair means, or an undue amount of beating was not inflicted, he could have found no justification for the use of the weapon. The two men were about the same size, and, if there was any advantage, I think it was probably in favor of the assailant, and if he had used his free hand to extricate himself he probably would have been able to do so. If he had not been able to do so, he certainly could have used it as a signal of surrender, which he should have done before resorting to the use of weapons. It must not be lost sight of either that he had this dangerous weapon on him without any apparent reason or excuse. One carrying such a weapon may be reasonably expected to have lurking back somewhere in the recesses of his mind an intent to use same. One having such a weapon many times uses it prematurely, as this defendant did. I cannot follow counsel for defendant when he says that practically the moment the assailant is down he has a right to use a dangerous weapon to extricate himself, without first using the available means to extricate himself, or to indicate that he has abandoned the affray. This would be an extremely dangerous and unwarranted principle. If the assailant wants to have the benefit of the law of self-defense, it is generally a simple thing for him to indicate his abandonment of the disturbance.

■■ As said in 2 Ruling Case Law at 550, in section 28: "Where a person is himself violating the law, and on account of his own wrong is placed in a situation where it becomes necessary for him to defend himself against an attack, then the law justly limits his right of self-defense, and regulates it according to the magnitude of his own wrong." But then continues, that — "However, where a person has in good faith abandoned his intention to inflict injury on another and is retreating, he is entitled to defend himself if pursued and attacked."

■ Approving the same principle it is said, in 5 Corpus

Juris 749, that — "Ordinarily one who has provoked the difficulty cannot avail himself of a plea of self-defense, unless he has afterward, and in good faith, actually withdrawn from the conflict, or, according to the rule in some jurisdictions, in good faith attempted to withdraw therefrom, or unless the prosecutor uses more force than was necessary to prevent defendant's aggression . . .".

■■ The principle upon which I have acted was further elicited in State vs. McCann, 72 Pac. 137, where the court, inter alia, said: "It is insisted by defendant's counsel that the court erred in charging the jury as follows: 'I further instruct you, in relation to the law of self-defense, that one cannot claim its benefits after he has intentionally put himself where he knows or believes he will have to invoke its aid. Circumstances justifying assault, in the law of self-defense, must be such as to render it unavoidable. If you believe from the evidence, and beyond a reasonable doubt, that the defendant could have avoided any conflict between himself and Halliday without increasing the danger to himself, it was his duty to avoid such conflict and so render a resort to the law of self-defense unnecessary.' It is argued that this instruction is misleading, because it ignores the fact that, though the defendant may have begun the assault, he may nevertheless have endeavored to withdraw from the conflict at the time Halliday was advancing upon him with a knife as the defendant testified, and that it is also contrary to law, for the reason that it conveyed to the jury the idea that it was the imperative duty of the defendant to retire, without regard to the character of or the place where the assault was committed upon him. It appears that on September 20, 1901, McCann having entered the corridor of a hotel at Grants Pass, where he and Halliday were guests, passed the latter, who was sitting in the room near its entrance, whittling with a pocketknife, and in a few minutes started as if to go out, but

244

when near the door he suddenly turned and began to strike Halliday with his fists, calling him vile names, and drew his pistol. Halliday rose, laid aside his knife, as all the witnesses testify except the defendant, and, reaching for the weapon, followed McCann, who stepped backwards, and, as he attempted to grasp the pistol, McCann fired; the bullet striking him in the forehead, fracturing his skull, and coming out at the side of his head. Though McCann was a guest of the hotel, and rightfully in the room yet in passing out of it he evidently sought to provoke a difficulty with Halliday by striking him with his fists and calling him approbrious names and drawing his pistol; and when Halliday rose he backed away, probably expecting his adversary would follow him, and thus furnish an excuse for the use of the weapon which he held in his hand. The right of self-defense is based upon the broad ground of necessity, which is evidenced by a real or an apparent exhibition of force, superinducing a reasonable apprehension of imminent danger, which justifies the use of force to repel the force, but without such necessity the right to resort thereto does not exist. State v. Morey, 25 Or. 241, 35 Pac. 655, 36 Pac. 573; State v. Smith (Or.), 71 Pac. 973. Halliday, prior to the assault upon him, made no demonstration that would lead McCann, as a reasonably prudent man, to believe that he was in any danger, immediate or remote, and hence no necessity existed for a resort to the use of force. The language employed by the court in the instruction complained of must be read in the light of the surrounding facts. It is possible that under some circumstances the charge might be subject to objection, for in a free country it is not expected that one person shall flee from another, and it may be that the demands of business might require one intentionally to go where he knows or has reason to believe he may be in imminent danger, and possibly compelled to resort to force as a matter of self-defense. In the case at bar,

however, though it is conceded that the defendant had a right to enter the hotel, yet in passing out of it he purposely turned aside to assault Halliday. No apparent necessity existed for the course which he adopted, and he could evidently have avoided any conflict without increasing the danger to himself. If the defendant, after precipitating the attack, withdrew from the conflict, thereby evincing a determination to avoid further difficulty, the testimony fails to disclose such fact, and it was necessary to instruct the jury upon a theory that had no facts to support it. In State v. Hawkins, 18 Or. 476, 23 Pac. 475, Mr. Justice Strahan, in commenting upon a similar state of facts, says: 'When a man is armed, and seeks another for an affray or an altercation, the law will not permit him to provoke and urge on the difficulty to a point where there is an appearance of an attempt to use weapons, and then justify the aggressor in taking of life simply on the ground of apparent danger. In such case he is the aggressor, and the active cause of the danger which menaces him, and he must abide by that condition of things which his own lawless conduct has produced.' The instruction, in our opinion, correctly states the law applicable to the facts involved, and no error was committed in giving it." People v. Douglas (Cal.), 25 Pac. 417. See also subsection 3 of section 8, ch. 5, Penal Code (1921, Title IV; 14 V.I.C. § 927 (2) (C)).

The following cases further illustrate the general nature of the right of self-defense: State v. Bowers, 65 S.C. 207, 95 Am. St. Rep. 795; Jackson v. Commonwealth, 98 Va. 845, 36 S. E. 487; People v. Lennon, 71 Mich. 298, 15 Am. St. Rep. 259, 38 N.W. 871; Meuly v. State, 26 Tex. App. 274, 8 Am. St. Rep. 477, 9 S.W. 563; State v. Ballou, 20 R.I. 607, 40 Atl. 861.

And the following cases elaborate upon the right of self-defense where defendant provokes the encounter or was

246

the aggressor: State v. Gordon, 109 Am. St. Rep. 790; Haynes v. State, 17 Ga. 465; State v. Summer, 74 Am. St. Rep. 717, and note; Howard v. State, 110 Ala. 92; Story v. State, 99 Ind. 413; Floutch v. State, 95 Tenn. 711, 45 L.R.A. 687; Cotton v. State, 31 Miss. 504; Radford v. Commonwealth (Ky.), 5 S.W. 343.

Then, as to the necessity of the provoking party or aggressor to have abandoned the encounter in order to avail himself of the right of self-defense, the following cases are referred to: Johnson v. State, 58 Ark. 57, 23 S.W. 7; Padgett v. State, 40 Fla. 451, 24 So. 145; People v. Filippelli, 173 N.Y. 509, 66 N.E. 402; Stoffer v. State, 15 Ohio St. 47, 86 Am. Dec. 470; People v. Hite, 8 Utah 461, 33 Pac. 254; Duncan v. People, 134 Ill. 110, 24 N.E. 765; Smith v. State, 105 Tenn. 305, 60 S.W. 145.

■ That the withdrawal from the encounter must, however, be real and actual, and not for the purpose of gaining fresh strength or some advantage, was shown by: Parker v. State, 88 Ala. 4, 7 So. 98; Luckenbill v. State, 52 Ark. 45, 11 S.W. 963.

■ Furthermore, assailant must notify his adversary by his conduct that he has abandoned the contest in order to avail himself of the right of self-defense, and if the circumstances are such that he cannot so notify him, he must take the consequences: People v. Button, 106 Cal. 628, 46 Am. St. Rep. 259; People v. Hecker, 109 Cal. 451, 42 Pac. 307, 30 L.R.A. 403; State v. Smith, 10 Nev. 106.

Appended to State v. Gordon, supra, is an elaborate note dealing with the whole subject here involved, the tenor of which sustains my conclusions in every respect. All the authorities above cited go to sustain the conclusions reached by me as shown in the Findings of Fact and Conclusions of Law.

The rule seems to be an absolutely reasonable one, and is fully sustained by the authorities, and I see no reason

to depart from it in this case. Of course, the defendant may not agree with my conclusion as to the facts in the case, but, I think, my conclusions therefrom are entirely sustained by the preponderance of the evidence and the general circumstances of the case. Therefore, having this view of the law and the facts, I overrule the motion for a new trial.

Motion for new trial overruled.