Decided 29 May, 1899.

## STATE *v.* IVANHOE.

[ 57 Pac. 317.]

CRIMINAL LAW—URGING JURY TO AGREE—PREJUDICE.—On a trial for assault with intent to kill, the jury having reported their disagreement, the court instructed them that a great deal of time had been taken up, and, if they did not agree, the case would have to be tried by another jury, who could not arrive at a verdict any better than they could; that it was their duty to agree, if they conscientiously could; that they should pay proper respect to the opinions of each other; that the single object to be effected was to arrive

at a true verdict, which could only be done by deliberation and mutual con-
cessions; that no juror should violate his conscience, but, in determining
whether his convictions were sustained, he should consider the opinions of
the other jurors, and, if he could then conscientiously acquiesce in a verdict,
it was his duty to do so. The jury retired, and returned a verdict of convic-
tion. *Held,* that the instruction was erroneous and prejudicial to accused:
*State* v. *Saunders,* 14 Or. 300, and *State* v. *Hawkins,* 18 Or. 476, distinguished.

From Union :   ROBERT EAKIN, Judge.

F. S. Ivanhoe, an attorney, having been convicted of
a crime, appealed.                        REVERSED.

For appellant there was a brief over the names of
*Thos. H. Crawford* and *James A. Fee,* with an oral argu-
ment by *Mr. Crawford* and *Mr. Ivanhoe, in pro. per.*

For the state there was a brief and an oral argument
by *Mr. Samuel White,* District Attorney, and *Mr. D. R.
N. Blackburn,* Attorney-General.

MR. JUSTICE MOORE delivered the opinion of the court.

F. S. Ivanhoe was indicted for the crime of assault
with intent to kill, alleged to have been committed in
Wallowa County, by shooting and wounding one R. C.
Greig with a pistol ; and, having been convicted of an
assault with a dangerous weapon, he was sentenced to
pay a fine of $500, from which sentence he appeals. The
testimony given at the trial is not contained in the bill
of exceptions, but it is certified therein that evidence was
introduced tending to show that defendant went to the
place where the difficulty occurred to suppress a combat
between Mrs. Dalzell and Greig, whom he, in self-de-
fense, shot. The jury, having been in consultation all
night, were sent for, and reported that it was impossible
for them to agree upon a verdict, stating that they were
equally divided, whereupon the court again sent them
out, after instructing them as follows : ''The court will

call the attention of the jury to the fact that this is a case
of some importance.   There has been a great deal of time
taken up, and the case will have to be decided by some
jury selected the same way you have been selected, and
hear the same evidence, practically, you have heard.
And, if another should disagree, it would have to be tried
again, until a jury agreed, and it is not reasonable to
suppose that another jury could arrive at a verdict in the
case any better than you can.   It is your duty to agree,
if you conscientiously can do so.   You should pay proper
respect to the opinions of each other, and listen with a
disposition to be convinced by each other's arguments.
In this manner you may be able to determine whether
any opinion you now hold is justified by the evidence.
A proper regard to the judgment of other men will often
greatly aid us in forming our own judgments.   In many
of the relations of life, it becomes a duty to conform to
the opinions of others, when it can be done without a
sacrifice of conscientious convictions.   More especially
is this a duty when we are called to act with others, and
when dissent on our part may defeat and materially
affect the rights of third parties.   The single object to be
effected is to arrive at a true verdict, and this can only
be done by deliberation, mutual concessions, and a due
deference to the opinions of each other.   By such means,
and such means only, in a body where unanimity is re-
quired, can safe and just results be attained ; and, with-
out that, the trial by jury, instead of being an assistance
or essential aid in the administration of justice, would
become a most effectual obstacle to it.   Jurors should
carefully and patiently canvass all the evidence with an
honest and conscientious effort to reconcile any differ-
ences of opinion they may entertain of the truth of the
matter in issue.   Of course, at last, each juror must act
on his own judgment—the verdict must eventually be

his own verdict; and I would not by these instructions
at all urge any juror to violate his conscience, or to agree
to a verdict other than he eventually believes to be the
result of the evidence, beyond a reasonable doubt. I
speak of these matters to you on account of the impor-
tance of the jury arriving at a verdict in this case. And,
as I have already suggested in this case, I would not in-
struct any juror to violate his conscience in reaching a
verdict; but, in determining whether his convictions are
sustained or based exclusively on the evidence, he has a
right to consider the opinions of other jurors, and listen
to their construction of the evidence, as well as his own,
and, if he can then conscientiously acquiesce in a verdict
with the other jurors, it is his duty to do so, without vio-
lating any conscientious scruples or beliefs he may have
in regard to the guilt or innocence of the party accused
of the offense.'' An exception to these remarks having
been saved, it is contended that the court thereby urged
six of the jurors to desist from any further consideration
of the evidence, and to surrender their convictions based
thereon to the opinions of their associates, who were
more persistent in advocating a different theory of the
case, and that by this means a compromise verdict was
undoubtedly returned, to the prejudice of defendant's
substantial rights.

In *Randolph* v. *Lampkin*, 90 Ky. 552 (10 L. R. A. 87,
14 S. W. 539), the jury, after having been out for some
time, returned, and reported that there was no possibility
of their agreeing, whereupon the judge said to them :
''Gentlemen, how do you expect this case to be decided,
unless you do it ? This is, as you know, the third trial
of this case, and it has become an incubus upon the busi-
ness of the court. You were examined in your selection
as members of this jury, and none of you disclosed any-
thing to cause me to doubt your capacity to try the case

and decide it. You must decide it. You have given
the case a close and patient hearing. You must be pa-
tient and considerate of one another in your delibera-
tions, and give the case full consideration. You were
hearing the case three or four days, and you must take
more time in your deliberation. You say you can't
agree. It is no credit to a man, merely because he has
an opinion, to stubbornly stick to it, but he should be
open to argument and reason and conviction. You
ought to go into the jury room with a spirit of concilia-
tion and disposition to agree. You, gentlemen, should
kindly and in good temper listen to each other, and chari-
tably listen to those with whom you don't agree. The
judge has to decide cases, often, when he is doubtful as
to the right. Even in our families, by listening to our
wives and members of our family, we change opinion.
I trust you will retire, and give to each other a patient
consideration, and reach a conclusion in this case. Gen-
tlemen, you will retire to your room for further consid-
eration.'' A verdict having been returned, upon which
judgment was given, Mr. Justice LEWIS, in reversing
it, says: ''It does not appear, nor is it contended, the
judge of the court intentionally abused the discretion
which he had, and might reasonably exercise, as to
length of time the jury ought to have been kept together
with a view to agreement upon a verdict; but it seems
to us, when the fact the jury had come into court, and
announced it impossible for them to agree, and the
length, tone, and manner of the address by the court,
are considered, the conclusion is almost inevitable that
the jury brought in a verdict which they would not have
rendered but for the interposition of the court; and as
the actual finding shows evidence of a compromise of
opinion, and yielding by some of the jury of their pre-
viously announced unalterable conviction, we think the

verdict cannot be regarded as the result of deliberate judgment, but was brought about by the supposed paramount duty of the jury to agree upon a verdict, rather than by free and unbiased conviction of what their verdict ought to be ; and, whenever the interference of the court appears to have had such effect upon the jury, their verdict ought to be set aside."

In *Whitelaw's Ex'r* v. *Whitelaw*, 83 Va. 40 (1 S. E. 407), the court, upon the failure of the jury to agree upon a verdict, said to them : "Under the particular circumstances of this case, you should be disposed to yield something in deference to the opinions of others, and especially should you do so when those differing from you exceed in numbers, other things being even ;" that an honest purpose to agree excluded all self-will and obstinacy of purpose ; that the very construction of a jury supposes concessions, and the man who cannot concede is unfit for a juror, "yet a case may arise in which a duty may be so plain that concessions cannot properly be made. But this exists only in plain cases. It cannot arise in cases in which the weight of conflicting evidence is somewhere about even. Do your duty, gentlemen, and leave the rest to me." Mr. Justice Lacy, in reversing the judgment based upon a verdict obtained under such circumstances, says : "In this case the court was not satisfied with charging the jury at great length upon their general duties as jurors, but, in effect, instructs them that the minority should yield to the majority— that is, concede to the majority something in this particular case ; that the evidence was very conflicting, etc. How much this judge thought the minority must concede to the majority, the jury is not informed ; but upon what principle could this be held, except that the majority should govern, and that the question should be decided by a vote, the voice of the majority being then reported

to the court as the unanimous verdict of the jury. The minority of the jury may thus have been induced to believe that by such a course all responsibility would be removed from them upon their oaths, and placed upon the majority, or possibly upon the court; for the judge loftily concludes, 'Do your duty, gentlemen, and leave the rest to me.' We think a verdict thus obtained cannot be said, in any just sense, to be the verdict of the jury. The course of the trial judge, we think, was an altogether unwarrantable invasion of the domain of the jury, and, if upheld, would tend to render jury trials a mockery. It lies at the foundation of jury trials that by their verdict the jury shall determine the issue joined, upon their consciences, without outside influence, or coercion from the court or elsewhere.''

In *Cranston* v. *New York, etc. R. R. Co.*, 103 N. Y. 614 (9 N. E. 500), the jury, after deliberating some time, returned into court, and, one of them having stated that there was no probability of their agreeing, the court said to them, ''I can't take any such statement as that, gentlemen, you must get together upon a matter of this kind;'' adding, ''No juror ought to remain entirely firm in his own conviction, one way or another, until he has made up his mind, beyond all question, that he is necessarily right, and the others necessarily wrong.'' The jury were thereupon again sent out, and, having found a verdict in favor of the plaintiff, the judgment rendered thereon was reversed. Mr. Justice Rapallo, speaking for the court, says: ''We are of the opinion that the instruction excepted to was not a correct statement of the law. It was incumbent upon the party holding the affirmative of the issue, who in this case was the plaintiff, to satisfy the jury, by a preponderance of evidence, of the facts upon which her right to recover depended. If she failed to do so, the defendant was entitled to a verdict. The jurors

who were not satisfied, by the evidence, of the truth of the plaintiff's allegations, were justified in refusing, for that reason, to find a verdict in her favor, although they might not have made up their minds beyond all question that they were necessarily right, and that those who were in favor of finding a verdict for the plaintiff were necessarily wrong. To sustain this instruction would be to cast upon the defendant in a civil action a burden quite as heavy as that which rests upon the prosecution in a criminal case, and perhaps still more onerous. If the evidence was so clear as to lead to a conclusion with the degree of certainty required by the charge, there was nothing to submit to the jury, and it was the duty of the court either to direct a verdict or to nonsuit the plaintiff.''

In *State* v. *Bybee*, 17 Kan. 462, the defendant was indicted for the crime of assault with intent to kill, and the jury, having heard the evidence, which tended to show that the defendant was guilty as charged, or not guilty, retired; but, being unable to agree upon a verdict, the court sent for, and said to, them : ''I am led to infer, from the character of your communications to me, that you think it impossible to agree, and desire to be discharged. You have heard the evidence, and the case has been ably argued by counsel, and the court has afforded every facility to enable you to understand the case. The trial has been very expensive to the public, and has occupied a great deal of time and attention, and it is not possible that it will ever be more clearly presented than it has been in this its first presentation to a jury. I do not desire to try the case again. It is often considered a reflection on the court, and upon you, as jurors, should you not agree. You have been impaneled to come to an agreement, not to wrangle over pet ideas and theories. It is the duty of the jury to agree, if

possible.   The theory of an agreement by the jury is that twelve minds are brought as nearly together as it is possible for twelve minds to come.   To bring about this result, it is necessary for the individual juror, in matters of detail, and on questions of minor importance, to defer to some extent to his fellow jurors, and to surrender some of his own ideas and opinions to what seems to be an overwhelming sentiment against him.   None of us are infallible.   And in your deliberations you should realize this, and mutually depend upon each other. And, in the consideration of the details of the case, you should meet the questions, as they arise, in a spirit of mutual concession and forbearance, and thus gradually as you proceed, step by step, to arrive at a conclusion to which you can all assent, although, if left to yourselves, you would probably have come to a different conclusion. You should bring your minds together, like the mixing of different ingredients by an apothecary, and ascertain what is the product.   In a case of this importance, I feel it to be my duty to afford you the most ample opportunity to agree.   It is not my purpose to force you to a verdict not in accordance with your convictions.   My experience with juries has taught me that they often agree after they have imagined it impossible to do so, and after the agreement they have been surprised that they ever disagreed.   I hope this will be your experience. I therefore urge upon you to make another effort, in a spirit of reconciliation, and fairness to each other, to the accused, and to the public, and, if possible, agree upon a verdict ; and I warn you not to think of being discharged for some time to come.''   An exception to these remarks having been saved, the jury were again sent out, and, having found the defendant guilty of assault only, he was sentenced to pay a fine of $500, from which he appealed.

Mr. Justice BREWER, in reversing the judgment, says : "It also appears, both from the bill of exceptions and from other parts of the record, that the jury were for a long time unable to agree, and, if we may credit some of the affidavits filed upon the motion for a new trial, were evenly divided. It seems to us, under these circumstances, that the remarks of the learned court were calculated to exert too strong a pressure upon the jury in favor of the agreement. It may not, perhaps, be possible to single out any particular sentence, and say that this is, strictly speaking, and taken by itself, erroneous, and sufficient to justify a reversal, though there are some that seem to trespass a good deal on the right and duty of each juror to the free exercise of his individual judgment. Yet the general impression of these instructions, as we read them, and, as it seems to us, must have been received by the jury, is that the jury ought, by compromise and surrender of individual convictions, if necessary, to come to an agreement, and that a failure to do so would be an imputation upon both jury and court. Now, while a court may properly call the attention of the jury to many matters which increase the desirability of an agreement, such as the time already taken, the improbability of securing additional testimony, the general public benefit in a speedy close of a litigation, and, at least in cases where the matters at stake are of minor importance, the question of expense to the parties and the public, yet no juror should be influenced to a verdict by a fear of personal disgrace or pecuniary injury. No juror should be induced to agree to a verdict by a fear that a failure to so agree would be regarded by the public as reflecting upon either his intelligence or his integrity. Personal considerations should never be permitted to influence his conclusions, and the thought of them should never be presented to him as a motive for

action. Nor do we think the illustration given by the learned judge a happy one. A verdict is the expression of the concurrence of individual judgment, rather than the product of mixed thoughts. It is not the theory of jury trials that the individual conclusions of jurors should be added up, the sum divided by twelve, and the quotient declared the verdict, but that from the testimony each individual juror should be led to the same conclusion; and this unanimous conclusion of twelve different minds is the certainty of fact sought in the law. Especially is this true in criminal trials. Here should no thought of compromise be tolerated. Before the state can fairly demand the conviction and punishment of an alleged criminal, the twelve jurors should each be led from the testimony to a clear conviction of his guilt; and where six jurors believe a defendant guilty of murder, and six believe him innocent of any offense, it is an outrage for the twelve to bring in a compromise verdict of guilty of manslaughter. We fear that something of this kind occurred in this case, and that the charge above quoted was mainly instrumental in producing this result. At any rate, it seems to us clear that such would be the tendency of those instructions, and it is not apparent that it did not have that effect. For this error the judgment must be reversed, and the case remanded, with instructions to grant a new trial.''

If a verdict is to be attained by mutual concessions on the part of the jurors, the result must necessarily be a general average of the sum of the different opinions entertained by each, and, when a juror consents to the average agreed upon, the verdict is eventually his own. The bill of exceptions not containing any of the testimony, we cannot say whether it was possible for six of the jurors conscientiously to entertain an opinion therefrom that defendant was guilty as charged in the indict-

ment, while their fellows were convinced that he was innocent, or guilty of an assault only.   The mutual concessions insisted upon may have resulted in the verdict which was returned.   True, the jurors were told not to violate their consciences, and this remark may have qualified the other portions of the instruction.   However this may be, we think the charge was erroneous, since by following it a compromise verdict may have been reached, while the defendant was entitled, under the law, to the unanimous judgment of twelve disinterested jurors as to his guilt or innocence.   When a cause has been submitted to a jury, the duty of returning a verdict devolves upon them ; and it has been held that if the court threaten to keep them confined until they agree, in consequence of which they are coerced into surrendering their honest convictions, or if they are urged to render a compromise verdict, or that a minority of the jurors should yield their settled beliefs to the opinions of the majority, a judgment based upon a verdict obtained under such circumstances will be reversed on appeal: *Taylor* v. *Jones*, 2 Head, 565;   *Hancock* v. *Elam*, 3 Baxt. 33 ;   *Richardson* v. *Coleman*, 131 Ind. 210 (31 Am. St. Rep. 429, 29 N. E. 909);   *Boden* v. *Irwin*, 92 Pa. St. 345 ;   *Chesapeake, etc. R. R. Co.* v. *Barlow*, 2 Pickle, 537 (8 S. W. 147).   In *State* v. *Saunders*, 14 Or. 300 (12 Pac. 401), an instruction urging the jury to agree upon a verdict was held unobjectionable ;   but, this charge having been given before the jury retired, it was impossible for the court to know that there was any probability of a disagreement.   So, too, in *State* v. *Hawkins*, 18 Or. 476 (23 Pac. 475), the court, before the jury retired, gave similar instructions, and it was held that no error was committed.   In the case at bar, however, it was known that the jury had disagreed and were equally divided

35 OR.—11.

in opinion when the instructions complained of were given, which emphasizes the importance of the language adopted ; and, believing that the charge was erroneous and prejudicial to the defendant, the judgment must be reversed, and a new trial ordered.          REVERSED.

Decided 5 June, 1899.