Argued on review October 11, affirmed November 5, 1971

# STATE OF OREGON, *Respondent, v.*
# ROGER MARSH, *Petitioner.*

490 P2d 491

*Gary D. Babcock,* Salem, Public Defender, argued the cause and filed briefs for petitioner.

*W. Michael Gillette,* Salem, Assistant Attorney General, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General and Jacob. B. Tanzer, Solicitor General, Salem.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, TONGUE and HOWELL, Justices.

TONGUE, J.

This is an appeal from a conviction for rape in the front seat of a "Mustang" automobile. Defendant's conviction was affirmed by the Court of Appeals, 6 Or App 171, 485 P2d 1253 (1971).

In support of his petition for review by this court defendant has contended: (1) that the trial court erred in denying his motion for directed verdict because "the state's proof is utterly unreasonable and contrary to all human experience"; (2) that the trial court erred in instructing the jury that ten of their number could find defendant guilty, contrary to de-

fendant's contention that the Sixth Amendment right to trial by jury includes the right to an unanimous verdict in all criminal cases, and (3) that the trial court erred in urging the jury to make a decision by a modified "Allen" or "dynamite" charge, after being informed by the jury that it was deadlocked. The petition for review was granted by this court primarily because of defendant's last contention.

At the time of oral argument it was conceded by the Public Defender, who appeared as attorney for defendant, that the State's evidence was sufficient to support the verdict. In view of defendant's original contention, however, we have examined the entire record in this case and find that there was ample testimony, if believed by the jury, to support its verdict, including evidence to corroborate the testimony of the complaining witness.

In *Rostad v. Portland Ry etc Co.*, 101 Or 569, 576, 201 P 184 (1921), this court has held that it was proper to instruct the jury "* * * to bring to your assistance your experience as men of affairs * * *." In so holding we said (at 578) that "* * * any juror must consider the testimony in the light of that knowledge and experience which is common to all men * * *." See also McCormick on Evidence 691, § 323. That case may have been tried before an all-male jury and was decided by this court before the advent of "woman's lib."

Nevertheless, because the men and women who sit as members of a jury do so as representatives of the community and because under our system the jury is the exclusive judge of the facts, it is not for the members of this court to substitute their judgment, based upon their knowledge and experience for that

of the jurors in this case and to say that in this day and age a charge of rape in the front seat of a "Mustang" automobile is "utterly unreasonable and contrary to all human experience."[1]

■ In *State v. Gann*, 254 Or 549, 463 P2d 570 (1969), we held that the constitutional right of a defendant to trial by jury in a criminal case does not require conviction by an unanimous verdict or forbid conviction by a ten to two verdict, as provided by the Oregon Constitution.[2] Unless and until the Supreme Court of the United States holds otherwise, we abide by that decision.

This leaves for consideration defendant's contention that the trial court erred in giving a so-called "Allen" or "dynamite" instruction to "blast" loose the deadlocked jury.[3] In considering this contention it is necessary to understand not only the terms of the particular instruction as given in this case, but also the circumstances under which it was given, including the failure of defendant's attorney to make any proper exceptions to the instruction at that time.

---

[1] In support of that contention, defendant says that, according to the testimony of the complaining witness, defendant must have climbed through an open window on the left side of the automobile and performed the rape while the car was in a parking lot with its motor running and without disturbing the gear shift between the front seats. The complaining witness testified, however, that when defendant entered the car she had her head turned and was trying to get to the other side of the car, so that the jury could have found that he entered by opening the left door of the car. She also testified that upon entering the car defendant turned off the motor and then attacked her.

[2] Oregon Constitution, Art I, § 11.

[3] The name "Allen" charge is taken from the name of the case in which such a charge was approved in *Allen v. United States*, 164 US 492, 17 S Ct 154, 41 L ed 528 (1896).

*Instruction Given and Circumstances Under Which Given.*

At about 4:20 p.m. the trial judge completed his original instructions to the jury and it then retired for deliberation. At 8:45 p.m. (after the jury had been sent out for dinner) the jury sent the following note to the court: "Our discussion is six guilty, six not guilty."

The trial judge then informed counsel that he "propose(d) to call the jury in and instruct them," after which "each side may be permitted to take whatever exception it feels it should." Neither attorney objected to such a procedure. The trial judge then instructed the jury as follows:

> "Members of the jury, it is now not quite 9:00 o'clock. You have been at work since about 4:30 this afternoon, omitting the dinner hour. The note you have sent in a moment ago indicates that your number stands six for one side and six for the other.
>
> "It is my duty to urge you to reach a decision on this case. This case has to be tried either now or later. It is unlikely that this case will ever be tried by any jury more competent and more representative of the community than yourselves. It is unlikely that the evidence would be any different before any later trial than it was before this one and so it is important that the matter be resolved. Those of you who stand on one side of the question should give respectful attention and consideration to the views of those opposed. And vice-versa.
>
> "None of this, however, should be construed by you as suggesting that I believe that you should not vote any other way than your own conscience based upon the evidence and the instructions in this case. None of us expect you to do anything other than that. But I am sure that you realize along with me

that this case should be decided. It ought not to be decided unless it is decided by the appropriate number ten to two and it ought not to be decided unless those ten of you who concur, if you do, each reach your decision honestly base [sic] upon the evidence and the law and your own view of the matter; so nothing I say should be taken as meaning that I want any of you to vote other than what your own good judgment dictates. But for the reasons I have mentioned I urge you to go back and to deliberate further and see if you can reach a verdict. You may now be excused to the jury room."

The jury then retired again and the court asked if there were any exceptions. No exceptions were taken by either attorney.

At shortly after 11:00 o'clock p.m. the court sent the following note to the jury, with consent of counsel: "Without indicating how your vote stands as to guilty or not guilty, please indicate how many are on one side and how many on the other." That note was sent back stating that nine were on one side and three on the other. The court then sent a further note, also with consent of counsel, asking if there was "any reasonable chance of arriving at a verdict in the next thirty minutes." In response the jury sent out a note which read: "If there is no resistance for a time and then just before penetration there is resistance, does it still constitute rape?"

Defendant then moved for a mistrial. That motion was denied, in effect, by the trial judge in stating that he proposed to reinstruct on rape. Defendant took a further exception to such an instruction, which was then given. The court then, at 12:10 a.m., gave the

additional instruction on rape and concluded with the following:

"Further, I will repeat to you what I told you earlier this evening at about 9:00 o'clock. What we ask of you is the honest, conscientious individual vote of each one of you for any given verdict. We ask each of you on one side to carefully consider the discussions, points of view of those on the other side. And we point out to you that this case ought to be decided. If it is tried again in all likelihood the jury will be no better equipped than yourself, the jury will be similarly selected as you were in all likelihood, the evidence will be the same. And therefore, it is incumbent upon you to reach a verdict. Bearing in mind, however, that we do not expect any of you to vote one way or the other except according to your own conscience based upon the evidence and upon these instructions. I will now ask you to retire to deliberate further."

No exception was taken to this instruction as an "Allen" or "dynamite" charge, as now contended.[4]

At 12:28 a.m. the jury notified the bailiff that it had a verdict. Defendant's counsel then renewed his motion for a mistrial.[5]

---

[4] The only exception taken by defendant to any of these instructions was as follows:

"Your Honor, I feel that at this time, because of the lateness of the hour, because the jury has been deliberating so long that the court should have in addition given the instruction about reasonable doubt and about the State having that burden because the court did not give that instruction, I would take an exception to the instructions."

[5] Defendant's motion was as follows:

"Your Honor, at this time I wish to renew my motion for a mistrial on the basis that the previous instructions to which the defendant has taken exceptions to may have unduly influenced the jury to be prejudiced of this client. In addition to the instructions that the defendant would have requested,

The jury then returned a verdict of guilty by a vote of ten to two and was then excused. No further exceptions or motions for mistrial were made at that time by defendant.

*Origin and History of "Allen" Charge—Recent Criticism.*

The "Allen charge," often called the "dynamite charge" is a supplemental instruction given to encourage deadlocked juries to reach agreement. The first reported case of such an instruction was in an 1851 Massachusetts case.[6] In 1896 an almost identical charge was approved by the Supreme Court of the United States in *Allen v. United States.*[7]

The central idea of the instruction is that although no juror is expected to yield a conscientiously held opinion, the jury has a duty to decide the case if it can conscientiously do so and that if a majority of the jury is for either conviction or acquittal, the minority ought to consider whether a contrary view may be reasonable and correct.[8]

that is the instructions on the burden of proof that the State must carry, reasonable doubt, the defendant feels that the court should have, in order to preserve the fairness of the jury's deliberations, also, reinstructed the jury on the fact that the defendant is presumed to have been innocent."

On this appeal, however, defendant has not made any assignment of error based upon the foregoing motion or exceptions.

[6] Commonwealth v. Tuey, 62 Mass (8 Cush) 1, 3 (1851).

[7] 164 US 492, 501, 17 S Ct 154, 41 L ed 528 (1896).

[8] The instruction approved in *Allen, supra* note 7, is described, at p 501, as follows:

"* * * These instructions were quite lengthy, and were, in substance, that in a large proportion of cases absolute certainty could not be expected; that, although the verdict must be the verdict of each individual juror, and not a mere ac-

In recent years the "Allen charge" has been the subject of considerable discussion, including increasing criticism upon the ground that it is improperly coercive.[®]

In order to evaluate the use of the "Allen charge," or of any supplemental instructions to deadlocked juries, it is necessary to bear in mind the many

---

quiescence in the conclusion of his fellows, yet they should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority. * * *."

[®] See, for example, Comment: Deadlocked Juries and Dynamite: A Critical Look at the "Allen Charge," 31 U Chi L Rev 386 (1964); Note: Due Process, Judicial Economy and the Hung Jury: A Re-examination of the *Allen* Charge, 53 Va L Rev 123 (1967); Note: On Instructing Deadlocked Juries, 78 Yale L J 100 (1968); and ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury, 145-156, § 5.4 (Approved Draft, 1968). See also exhaustive review of authorities in Fields v. State, 487 P2d 831 (Alaska 1971); and United States v. Thomas, 449 F2d 1177 (DC Cir, 1971).

Thus, it has been stated (31 U Chi L Rev 386) as the introduction to this problem that:

"Deadlocks have historically been a problem in jury trials. The solution of the 14th century circuit-riding judge was simply to load the jurors into oxcarts and carry them about with him until a verdict was 'bounced out.' More recently, jurors have been prodded by such judicial indiscretions as bread and water diets and jury rooms purposely left unheated in the dead of winter. Crude methods of forcing verdicts have long gone out of fashion, but more subtle means of jury 'coercion' still exist. One of these is known as the 'Allen charge.'"

variations of the "Allen charge," as well as the fact that the extent to which such an instruction may be coercive depends largely upon the factual context or setting in which the charge is given in a particular case.

*Variations in Terms of "Allen" or "Dynamite" Instructions.*

As might be expected, over the years the various courts have developed many different variations and modifications of the original "Allen charge." These "progeny" have been described as "endless permutations" of the original instruction as approved in *Allen*.[⑩] They include, however, at least the following variations.

## 1. *The Original "Allen Charge."*

The original "Allen charge," as previously described, has been approved in numerous decisions, including subsequent decisions by the Supreme Court of the United States.[⑪]

---

[⑩] 53 Va L Rev 123, *supra* note 9, at 125. See also 31 U Chi L Rev, *supra* note 9, at 387.

This court has also previously considered variations of the "Allen" charge in State v. Butler, 96 Or 219, 186 P 55 (1919), and State v. Ivanhoe, 35 Or 150, 57 P 317 (1899). See also State v. Hawkins, 18 Or 476, 23 P 475 (1890); and State v. Saunders, 14 Or 300, 12 P 441 (1886).

[⑪] See cases cited in dissenting opinions by Robb, J., in United States v. Thomas, 449 F2d 1177 (DC Cir, 1971), including Kawakita v. United States, 343 US 717, 72 S Ct 950, 96 L ed 1249 (1952). See also opinion by Burger, J. (now Burger, C.J.), then a member of Court of Appeals for the District of Columbia, in Fulwood v. United States, 125 US App DC 183, 369 F2d 960 (DC Cir 1966), cert den 387 US 934, 87 S Ct 2058, 18 L ed 2d 996 (1967).

See also Annot, 100 ALR2d 177, 182-91 (1965), and ABA Project on Minimum Standards for Criminal Justice, *supra* note 9, at 149; 31 U Chi L Rev, *supra* note 9, at 387; and 53 Va L Rev, *supra* note 9.

In more recent decisions, however, some other courts have been critical of the terms of the original "Allen charge" for its emphasis upon persuading the members of the minority of a jury to reconsider their views and for its potential coercive effect upon such a minority.[28] The original "Allen charge" has also been described as the "limit" beyond which a trial judge cannot go.[29]

### 2. *"Modified" and "Balanced" Allen Charges.*

As the result of such criticism, some courts have modified the terms of the original "Allen" charge so as to direct its emphasis not only at members of the minority of the jury, but also at members of the majority, or so as to urge all members of the jury, without reference to whether they are members of the minority or majority.[30] On the contrary, such an attempt has also been described by one court as "an invitation to a frolic with Alice in Wonderland."[31]

Other courts have modified the original "Allen" charge so as to make it a more "balanced" charge by greater emphasis upon the fact that no juror is expected to abandon conscientiously held opinions and

[28] United States v. Johnson, 139 US App DC 193, 432 F2d 626, 631-32 (DC Cir 1970); and United States v. Fioravanti, 412 F2d 407, 416 (3d Cir 1969). See also United States v. Thomas, 492 F2d 1177 (DC Cir 1971); 53 Va L Rev, *supra* note 9, at 126, 134; and 78 Yale L J, *supra* note 9, at 139-40.

[29] See Fields v. State, 487 P2d 831, at 837 (Alaska 1971), and cases cited therein.

[30] See United States v. Johnson, 139 US App DC 193, 432 F2d 626, at 633 (DC Cir 1970); and 53 Va L Rev, *supra* note 9, at 143-44, 146; and 78 Yale L J, *supra* note 9, at 139-40.

[31] United States v. Fioravanti, 412 F2d 407, 417 (3d Cir 1969).

that the verdict must represent the verdict of all members of the jury.[16]

### 3. *Reference to Necessity or Expense of Retrial.*

Some courts have added to the original "Allen charge" a further instruction to the effect that if the jury does not reach a verdict, the case will have to be retried. Some of these instructions also emphasize the backlog of cases to be tried and the cost of retrial to the taxpayers and the parties.

Some also emphasize that on retrial the case will have to be submitted to another jury which will hear the same evidence and be no better qualified to decide the case than this jury. Such additional instructions have also been the subject of further criticism.[17]

### 4. *Instruction that Must Deliberate Until Reach Verdict.*

Perhaps the most extreme variations or extensions of the original "Allen charge" are those in which the trial judge, by supplemental instructions to a deadlocked jury, informs it that it must continue deliberations until it reaches a verdict or that the trial judge will not declare a mistrial as the result of a deadlocked jury. Such additional instructions have met almost universal condemnation by the appellate courts in recent years.[18]

---

[16] See cases cited in 31 U Chi L Rev, *supra* note 9, at 387 nn. 6 and 7; and 100 ALR2d, *supra* note 11, at 198-204. See also 53 Va L Rev, *supra* note 9, at 128-29.

[17] United States v. Thomas, 449 F2d 1177 (DC Cir 1971); United States v. Brown, 411 F2d 930, 931-33 (7th Cir 1969). See also United States v. Johnson, 432 F2d 631-32 (DC Cir 1970); and 78 Yale L J, *supra* note 9, at 138.

[18] United States v. Thomas, 449 F2d 1177 (DC Cir 1971); United States v. Brown, 411 F2d 930, 932 (7th Cir 1969); Fields v. State,

*Variations in "Factual Setting" of "Allen Charge."*

Almost as important as the terms of the "Allen charge," or its variations, is the factual "setting" or context in which such supplemental instructions are given to deadlocked juries.[18] These variations include the following.

### 1. *Relative Weight of the Evidence.*

In considering on review whether or not it was error for the trial judge to give an "Allen charge," or variation, to the jury, some appellate courts appear to consider the relative weight of the evidence; i.e., to be less inclined to reverse when such an instruction has been given if the evidence of guilt is overwhelming than if the evidence is otherwise.[19]

According to other authorities, however, the comparative weight of the evidence is not relevant in considering whether it was error to give such an instruction.[20]

### 2. *Knowledge of Trial Judge How Jury Stood.*

Some authorities also consider the giving of an "Allen charge," or variation, more apt to be improper when the trial judge has either first inquired or has been informed of the numerical split of the deadlocked

---

487 P2d 831, 836-37, 839 (Alaska 1971). See also Jenkins v. United States, 380 US 445, 446, 85 S Ct 1059, 13 L ed 2d 957 (1965); 53 Va L Rev, *supra* note 9, at 129; and 78 Yale L J, *supra* note 9, at 136.

[19] 53 Va L Rev, *supra* note 9, at 130-33.

[20] 100 ALR2d, *supra* note 11, at 204. See also 53 Va L Rev, *supra* note 9, at 133.

[21] ABA Project on Minimum Standards for Criminal.Justice, *supra* note 9, at 154; and 78 Yale L J, *supra* note 9, at 142.

jury.[22] The rationale of this position is that the giving of such a charge is more clearly coercive in its effect upon the minority of the jury.[23]

It appears, however, that there is a distinct split of authority on this question[24] and that there is good reason to support the contrary contention that the knowledge by the trial judge of such facts is irrelevant in considering the possible coercive effect of such a supplemental instruction upon the minority of the jury.[25]

### 3. *Time Jury Deadlocked Before and After "Allen Charge."*

Although it is ordinarily within the discretion of the trial court to determine how long the jury should be allowed to deliberate before giving it supplemental instructions to assist it in breaking the deadlock, that time interval may be so short as to raise the question whether the trial judge abused his discretion in failing to wait for a longer period to elapse before doing so.[26]

Similarly, the time interval in reaching a verdict after the giving of an "Allen charge" may be so short as to raise the question whether the jury was improperly coerced by the charge into returning a verdict without proper and further deliberations.[27]

---

[22] See cases cited at United States v. Fioravanti, 412 F2d 407 (3d Cir 1969), at 416 n. 20; and 53 Va L Rev, *supra* note 9, at 130-32.

[23] Note 22, *supra*.

[24] 100 ALR2d, *supra* note 11, at 181, 205-208; and 53 Va L Rev, *supra* note 9, at 131.

[25] ABA Project on Minimum Standards for Criminal Justice, *supra* note 9, at 154; and 53 Va L Rev, *supra* note 9, at 131.

[26] 53 Va L Rev, *supra* note 9, at 132. See also 100 ALR2d, *supra* note 11, at 208-210.

[27] Note 26, *supra*. But see ABA Project on Minimum Standards for Criminal Justice, *supra* note 9, at 154.

*Variations in Grounds for Decisions and in Results Reached.*

### 1. *Grounds for Decisions Approving "Allen Charge" or Variations.*

Most decisions approving the giving of an "Allen charge," or variation, to a deadlocked jury do so upon the ground that the terms of the particular charge were not improper or coercive, at least in the factual setting or context in which such a supplemental instruction was given in a particular case.[28]

It has also been held that the giving of a charge that might otherwise be held improper will be affirmed because of failure to make a proper and timely exception.[29]

---

[28] See authorities cited in notes 11, 14, 16, 21, 25, 26 and 27.

[29] See 100 ALR2d, *supra* note 11, at 211-12. As stated in United States v. Johnson, 139 US App DC 193, 432 F2d 626, at 633 (DC Cir 1970):

> "* * * But the defense trial counsel did not object to the charge. This is not merely a technicality. There are situations where defense counsel may believe that it is better to get a verdict from this jury than a mistrial, e.g., the case of a crime so dangerous as to make a *nolle prosse* unlikely; where there is little possibility of the disappearance or weakening of incriminating evidence; or where the current record taken as a whole is as likely to produce a verdict of not guilty as in any future trial. We cannot say that such tactical considerations guided this defense trial counsel, but the possibility is certainly strong enough to lead us to be cautious against any finding of plain error."

To the same effect, it was held in United States v. Robinson, 419 F2d 1109, 1112 (8th Cir 1969):

> "We * * * are constrained to believe that his [defense counsel's] failure to make timely objection was a strategic move resorted to in the belief that the appellant might obtain complete acquittal by reason of the court's statements. * * *."

See also dissenting opinion in State v. Randall, 137 Mont 534, 353 P2d 1054 (1960), in which no exception was taken, stating (at 1058) that:

> "* * * The instruction was as favorable to the defendant

## 2. Grounds for Decisions Disapproving "Allen Charge" or Variations.

### (a) Constitutionality.

Prior to 1969 no court had held that it was error to give the basic "Allen charge" upon the ground that to do so would violate the constitutional rights of a criminal defendant, although the charge had been criticized as coercive.[90] More recently, however, in *Fields v. State,* 487 P2d 831 (Alaska 1971), the Supreme Court of Alaska held (at 839) that the "dynamite" charge as given in that case violated defendant's constitutional right to a fair trial and to due process. In that case, however, the trial judge directed the jury to "continue your deliberations until you arrive at an unanimous verdict" and this was emphasized (at 836-37, 839) as the basis for the decision in that case.

Nevertheless, it has been strongly contended that the basic "Allen charge," with its emphasis directed toward the members of the minority of a jury, not only violates the right of a criminal defendant to conviction by an unanimous jury, but is also contrary to the con-

---

as it was to the State, and, if an acquittal had been had, the defendant would have been happy."

But see dissenting opinion United States v. Thomas, 449 F2d 1177 (DC Cir 1971); and State v. Randall, 137 Mont 534, 353 P2d 1054 (1960), at 1058.

[90] ABA Project on Minimum Standards for Criminal Justice, *supra* note 9, at 149-50; 53 Va L Rev, *supra* note 9, at 127, 136-37, 139; and United States v. Brown, 411 F2d 930, at 933 (7th Cir 1969). See generally United States v. Fioravanti, 412 F2d 407, 419 (3d Cir 1969), which rejected such constitutional contentions.

cepts of reasonable doubt and presumption of innocence.[60]

(b) *Supervisory Power.*

Most appellate courts which have disapproved all use of the "Allen charge," or variations, have done so under their supervisory power of control over the trial courts within their respective jurisdictions. This is particularly true of the federal courts.[61] Two state courts have made similar decisions upon that same ground.[62]

(c) *Error in Particular Case.*

Elsewhere, the usual approach has been to review the cases individually, taking into account both the language of the particular instruction and the

---

[60] See United States v. Fioravanti, 412 F2d 407, 418 (3d Cir 1969), which went on, however, to hold (at 419) that defendant was not denied a fair trial under the facts of that case and to affirm his conviction, although barring future use of the "Allen charge" in that circuit.

Two judges of the United States Court of Appeals for the Fifth Circuit have also argued the unconstitutionality of the *Allen* charge in opinions in Thaggard v. United States, 354 F2d 735, 739 (5th Cir 1965) (specially concurring opinion of Coleman, J.), cert den 383 US 958, 86 S Ct 1222, 16 L ed 2d 301 (1966), and Huffman v. United States, 297 F2d 754, 755 (5th Cir 1962) (opinion of Brown, J.), cert den 370 US 955, 82 S Ct 1605, 8 L ed 2d 820 (1962).

See generally 31 U Chi L Rev, *supra* note 9, at 390 n. 19; and 53 Va L Rev, *supra* note 9, at 136-144.

[61] United States v. Thomas, 449 F2d 1177 (DC Cir 1971); United States v. Brown, 411 F2d 930, 933 (7th Cir 1969). See United States v. Fioravanti, 412 F2d 407, 419-20 (3d Cir 1969).

[62] State v. Randall, 137 Mont 534, 353 P2d 1054 (1960), and State v. Thomas, 86 Ariz 161, 342 P2d 197 (1959).

factual setting or context in which it was given in each particular case.[34]

## 3. *Results in Decisions Disapproving "Allen Charge."*

Among recent cases there has also been considerable variation in the disposition of cases in which the courts have disapproved the giving of "Allen charge" or variations.

Where a finding of error has been based upon the conclusion that such an instruction was "coercive," after considering the particular terms of the supplemental instruction given to a deadlocked jury or upon the circumstances under which it was given, the usual result has been simply to remand the case for a new trial.[35] Where such a decision has been based upon the supervisory power of the appellate court, some courts have expressly stated that such a holding is not retroactive, but is to be solely prospective in its operation.[36]

Courts have, however, both disapproved the future use of the "Allen charge" under their supervisory power as appellate courts and, at the same time, have affirmed the conviction of the defendant in the case in which it made such a decision.[37] Courts

[34] 53 Va L Rev, *supra* note 9, at 127. See generally 100 ALR2d, *supra* note 11, at 177-217.

[35] See Fields v. State, 487 P2d 831, 847 (Alaska 1971), in which the decision to reverse and remand was based on the fact that the trial judge told the jury it must continue deliberations until it reached a verdict.

[36] See United States v. Thomas, 449 F2d 1177 (DC Cir 1971). But see State v. Thomas, 86 Ariz 161, 342 P2d 197, 200 (1959).

[37] United States v. Brown, 411 F2d 930, 934 (7th Cir 1969); and United States v. Fioravanti, 412 F2d 407, 420 (3d Cir 1969). See generally United States v. Johnson, 139 US App DC 193, 432 F2d 626, 633-34 (DC Cir 1970).

which have disapproved of the "Allen charge" have also been faced with the question whether to disapprove all such supplemental instructions to deadlocked juries or whether to approve some other and different instruction for use in such cases.

Three courts, the United States Court of Appeals for the District of Columbia and for the Seventh Circuit and the Supreme Court of Alaska,[38] have approved as a substitute, an instruction prepared and proposed by the American Bar Association Project on Minimum Standards for Criminal Justice.[39] An almost identical instruction was approved for future use by the United States Court of Appeals for the Third

---

[38] United States v. Thomas, 449 F2d 1177 (DC Cir 1971); United States v. Brown, 411 F2d 930, 933 (7th Cir 1969); Fields v. State, 487 P2d 831, 842 (Alaska 1971). See generally United States v. Johnson, 139 US App DC 193, 432 F2d 626, 631-32 (DC Cir 1970).

[39] ABA Project on Minimum Standards for Criminal Justice, *supra* note 9.

As "illustrative of an instruction consistent with section 5.4(a)" of the ABA Project on Minimum Standards for Criminal Justice, *supra* note 9, at 145, the following instruction taken from Instruction 8.11 of "Jury Instruction and Forms for Federal Criminal Cases," 27 FRD 39, 97-99 (1961), is set forth (at 146):

"The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

"It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict."

Circuit, although not stated to be the ABA approved instruction.[40]

It has been contended, however, that no supplemental instructions should be approved for use as a means of encouraging deadlocked jurors to make further attempts to agree upon verdicts. Thus, it is contended that any such instruction is "inherently coercive" and that the saving of court time is not worth such a rule, considering the small number of hung juries and the likelihood that most failures to reach a verdict stem from genuine and reasonable differences over the facts.[41]

*Analysis of Instructions Given in This Case and of "Factual Setting" and Circumstances of Case.*

1. *The Instruction as Given Did Not Violate Defendant's Constitutional Rights.*

2. The instruction given by the trial judge in this case was a "modified" charge in that it omitted reference to members of a minority or majority of the jury, but instead urged that "* * * those of you who stand on one side of the question should give respectful attention and consideration to the views of those opposed. And vice versa."

It was also a "balanced" charge in that in the supplemental instructions it was emphasized that "* * * what we ask of you is the honest, conscientious

---

[40] United States v. Fioravanti, 412 F2d 407, 420 (3d Cir 1969), approved the same instruction set forth in note 39, *supra,* as being "illustrative of an instruction consistent with section 5.4(a)," omitting only the first short paragraph.

[41] 53 Va L Rev, *supra* note 9, at 146-149. See generally cases and authorities cited in 78 Yale L J, *supra* note 9, at 105 n. 20.

individual vote of each one of you for any given verdict
\* \* \*" and that "\* \* \* we do not expect any of you
to vote one way or the other except according to your
own conscience \* \* \*."

The supplemental instructions did, however, in-
form the jury, in effect, that if the case was not
decided, the case would have to be retried before an-
other jury no more representative of the community
and probably on the same evidence. In the first in-
struction the trial judge also twice urged the jury
to reach a verdict, but also stated that the case "ought
not to be decided" unless the ten jurors who concur
can "\* \* \* reach your decision honestly base(d)
upon the evidence and the law and your own view of
the matter \* \* \*."

The final instruction was somewhat stronger in
that it told the jury that "\* \* \* it is incumbent upon
you to reach a verdict \* \* \*," but then immediately
added "\* \* \* bearing in mind, however, that we do
not expect any of you to vote one way or the other
except according to your own conscience \* \* \*."

Considering these instructions as a whole, we
are of the opinion that they were not so extreme or
otherwise improper as to deprive defendant of his
constitutional right to a fair trial or otherwise to vio-
late any of his constitutional rights. The reference to
a retrial if the jury did not reach a verdict was im-
proper, however.⊛ Also improper was the statement
that "it is incumbent upon you to reach a verdict," but

---

⊛ The instruction did not, however, directly refer to the back-
log of cases awaiting trial, to the expense of retrial, or to the tax-
payers or the parties, or much less state that the court would
refuse to declare a mistrial. See United States v. Thomas, 449
F2d 1177 (DC Cir 1971).

that statement was immediately "followed" by the reminder that no juror was expected to vote other than "according to [his] own conscience." In essence, this charge was quite similar to the ABA approved charge that each juror has the "duty" to "deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment."[38]

2. *The "Factual Setting" and Circumstances of the Supplemental Instruction were not Such as to Indicate That Defendant's Constitutional Rights Were Violated.*

3. In this case the trial judge did not at first inquire as to how the jury stood, but the jury sent out a note stating that it stood "six guilty, six not guilty." Thus, there was no "minority" to be "coerced" by the first supplemental instruction in this case.

Because of this fact, we do not consider that the relative weight of the evidence is a substantial factor in this case in determining whether any of defendant's constitutional rights were violated by that instruction. In any event, the relevance of such a factor has been criticized for reasons previously noted.[39] For the same reason, we cannot say that the time intervals before and after the giving of the first supplemental instructions in this case were such as to indicate that the jury was improperly coerced by such instructions.

---

[38] ABA Project on Minimum Standards for Criminal Justice, *supra* note 9, at 146. See generally United States v. Johnson, 139 US App DC 193, 432 F2d 626, 632 (DC Cir 1970), noting, among other things, that Chief Justice Burger was chairman of the ABA Special Committee on Minimum Standards in 1968–69, when that "Approved Draft" was published.

[39] See Note 21, *supra*.

Before the later supplemental instruction was given, however, the trial judge inquired how the jury stood, without indicating whether for conviction or acquittal, and was informed that it stood nine to three. No further supplemental instructions were given, however, until after the jury had responded to a further inquiry by the court asking whether it could arrive at a verdict in thirty minutes. The jury then sent out a second note which, in effect, requested further instructions relating to one of the elements of rape.

This would indicate that upon receiving such instructions the jury expected that it would, in all probability, be able to arrive at a verdict within thirty minutes. Thus, it would also appear that under these circumstances the fact that the jury returned its verdict within a few minutes after receiving the final instructions by the trial court does not demonstrate that it was "coerced" into returning a verdict of guilty by the further instruction urging it to reach a verdict if it could conscientiously do so.

In this "factual context" and under these circumstances, and considering also the "modified" and "balanced" nature of the supplemental instructions as given by the trial judge in this case, we hold that while it was improper to give such instructions, any error in doing so was not so serious or of such a nature as to violate any of defendant's constitutional rights.

3. *Conviction Affirmed in Absence of Exceptions to Instructions.*

For all of these reasons, we hold that defendant has not sustained his contention on this appeal that his constitutional rights to a fair trial and to due process of law were violated by the supplemental in-

structions in this case. If we felt otherwise, we might well reverse and remand this case for new trial despite the fact that defendant did not take exceptions to either of the supplemental instructions as given by the court in this case, but raised the constitutional question for the first time on this appeal.

■ We also hold that in the absence of constitutional error defendant's conviction in this case must be affirmed, even though it was improper to give such instructions, because of the absence of exceptions to the giving of such instructions.[39] This court has held repeatedly, in criminal as well as in civil cases, that judgments will not be reversed for errors in instructions where no proper exceptions were taken to such instructions unless, "upon examination of the entire record, the court can say that the error is manifest and that the ends of justice will not otherwise be satisfied."[40]

In this case, while we do not approve of the supplemental instructions as given by the court, and expressly disapprove of them, we have examined the entire record and cannot say that any error in the giving of such instructions was "manifest," in view of the many decisions by other courts, including previous decisions by this court, approving the giving of even

[39] Cf. Ball v. Gladden, 250 Or 485, 487, 443 P2d 621 (1968).

[40] Among recent cases reaffirming this rule, see State v. Kniss, 253 Or 450, 455 P2d 177 (1969); State v. Parejo, 253 Or 468, 470, 455 P2d 605 (1969); State v. Johnson, 253 Or 416, 453 P2d 852 (1969); and State v. Rupp, 251 Or 518, 446 P2d 516 (1968).

Substantially the same rule was also applied by this court in rejecting a claim of constitutional error which was raised for the first time on appeal, where no objection or exception was made at the time of trial (State v. Skinner, 254 Or 447, 449-50, 461 P2d 62 (1969)), as well as to constitutional questions raised for the first time in postconviction proceedings (North v. Cupp, 254 Or 451, 456, 461 P2d 271 (1969).)

stronger supplemental instructions.[40]  Neither can we say, upon examination of the entire record in this case that unless this conviction is reversed "the ends of justice will not be served," as also required under the foregoing rule before considering error to which no exception was taken in the trial court.

In this case, at least when the first supplemental instructions were given and the jury was "split six to six," those instructions were as favorable to the defendant as they were to the State.  And even when the final supplemental instructions were given in this case, defendant's attorney, who had acquiesced in the giving of the original supplemental instructions and who was able and experienced, may well have deliberately withheld exceptions to the terms of those instructions under the strategy that the defendant might obtain complete acquittal as a result of such instructions.  For these reasons, this was particularly the type of case in which a defendant should not be permitted to withhold exceptions at the time of trial and then urge on appeal, and for the first time, that the judgment should be reversed because of error in the giving of such instructions.[41]

---

[40] In so holding we have considered not only decisions by other courts, but also our previous decisions in State v. Butler, 96 Or 219, 186 P 55 (1919); State v. Ivanhoe, 35 Or 150, 57 P 317 (1899); State v. Hawkins, 18 Or 476, 23 P 475 (1890), and State v. Saunders, 14 Or 300, 12 P 441 (1886). In all of such cases the instructions involved were approved, except in State v. Ivanhoe. That case was decided prior to State v. Butler, in which an instruction similar to that given in this case was approved. In view of our disapproval of the future use of such instructions, however, all of such cases are overruled to the extent that they may be considered as authority for the future approval of the giving of such instructions.

[41] See generally cases cited in note 29, *supra.*

*Future Use of "Allen Charge" or "Dynamite Charge" Disapproved.*

We agree with the statements that "few would maintain that the trial judge should be required immediately to accept a jury's first indication of failure to agree without a fair attempt at encouraging agreement" and that "it is only the method used to induce a verdict that is questionable."[48]

We also agree, however, that the line between proper "guidance" and improper "coercion" is a fine line.[49] We are also concerned whether there is any proper standard or any coherent theory to apply in such cases other than to consider each case separately by looking at the particular terms of the instructions and the particular factual context and circumstances in each case.

Indeed, it is because of the "endless variations" of such instructions, as well as in such factual circumstances, that it is difficult, if not impossible, for the courts to uniformly administer the giving of such instructions.[50]

The problem also involves a balancing of such considerations as the need for economy in judicial administration by discouraging hung juries so as to eliminate the time and expense of retrials against the risk that defendants may be convicted as the result of improper coercion by the trial judge in the giving of a

[48] 31 U Chi L Rev, *supra* note 9, at 393.

[49] United States v. Thomas, 449 F2d 1177 (DC Cir 1971).

[50] 31 U Chi L Rev, *supra* note 9, at 393. See 53 Va L Rev, *supra* note 9, at 125, 127.

"dynamite" charge to a deadlocked jury.[58] In that connection, we are impressed with the apparently accurate statistics to the effect that of the small percentage of persons accused of crime who are actually tried before a jury, only a very small percentage are the subject of mistrials because of deadlocked juries.[59]

We are convinced, however, that the "Allen charge," even when "modified" and "balanced," carries a substantial potential for coercion, even though it may not be possible to demonstrate such coercion in a given case. Indeed, the potential for coercion is greater for the honest and the conscientious juror than for the occasional stubborn and unreasonable juror.[60] Indeed, there is considerable merit to the contention that the majority of a jury is not always right and that the possibility of a hung jury based upon an honest difference in opinion, is part and parcel of our jury system.[61]

For all of these reasons, we agree with the view that the giving of the "Allen charge," even when "modified" and "balanced," involves so many "pitfalls" and is such an invitation to error as to cause more trouble in the administration of justice than it is

---

[58] 53 Va L Rev, *supra* note 9, at 126-27, 136; and ABA Project on Minimum Standards for Criminal Justice, *supra* note 9, at 154-55.

[59] 53 Va L Rev, *supra* note 9, at 145, and 78 Yale L J, *supra* note 9, at 129.

[60] 53 Va L Rev, *supra* note 9, at 146. See ABA Project on Minimum Standards for Criminal Justice, *supra* note 9, at 151-52.

[61] See United States v. Fioravanti, 412 F2d 407, 416 (3d Cir 1969); State v. Randall, 137 Mont 534, 353 P2d 1054, 1058 (1960); and 53 Va L Rev, *supra* note 9, at 145-46.

worth.⁶⁸ We thus agree with those courts which have disapproved the future use of such supplemental instructions to deadlocked juries in criminal cases.⁶⁷

In accord with the views as expressed in most of the recent cases on this subject, however, we also approve the supplemental instruction proposed by the ABA Project, insofar as it is applicable in a jurisdiction not requiring unanimous verdicts in all cases, for use in this state in the event that a trial court may, in its discretion, deem it advisable to give some supplemental instruction to a deadlocked jury.⁶⁸ We agree,

---

⁶⁸ See State v. Thomas, 86 Ariz 161, 342 P2d 197, 200 (1959). See also United States v. Fioravanti, 412 F2d 407 (3d Cir 1969), quoting (at 420 n. 31) the following with approval from the dissenting opinion of Wisdom, J., in Andrews v. United States, 309 F2d 127 (5th Cir 1962):

"The Allen Charge causes more trouble in the administration of justice than it is worth. Its time-saving merits in the district court are more than nullified by the complications it causes on appeal when the reviewing court must determine whether in the circumstances of a particular case the trial judge applied the charge properly—in substance and in timing. 'Like Banquo's ghost it will not remain at rest.' Justice Udall, dissenting in State v. Voeckell, 69 Ariz. 145, 210 P.2d 972 (1949). And in this Circuit the ghost seems especially restless. See also Green v. United States, 309 F.2d 852 (5 Cir 1962)."

⁶⁷ United States v. Thomas, 449 F2d 1177 (DC Cir 1971); United States v. Fioravanti, 412 F2d 407 (3d Cir 1969); United States v. Brown, 411 F2d 930 (7th Cir 1969); and Fields v. State, 487 P2d 831 (Alaska 1971). These courts have also extended the same rule to civil cases—a question not before this court on this appeal. See also United States v. Johnson, 139 US App DC 193, 432 F2d 626 (DC Cir 1970); and State v. Randall, 137 Mont 534, 353 P2d 1054 (1960).

⁶⁸ The approved portions of that instruction are as follows:

"It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not

however, with the view that the terms of that recommended instruction are not to be regarded as "graven in stone."[98]

Affirmed.

---

hesitate to re-examine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict."

[98] United States v. Thomas, 449 F2d 1177 (DC Cir 1971).