Argued and submitted November 4, 2002, decision of Court of Appeals reversed; case remanded to Court of Appeals for further proceedings January 24, reconsideration denied April 29, 2003
See 189 Or App 478, 75 P3d 903 (2003)

Joseph SCHLIMGEN,
Personal Representative for the
Estate of Michael F. Schlimgen, deceased,
*Petitioner on Review,*

*v.*

MAY TRUCKING COMPANY,
an Idaho corporation,
*Respondent on Review.*

(CC 9803-02267; CA A107409; SC S49194)

61 P3d 923

Michael T. Garone, Schwabe, Williamson & Wyatt, P.C., Portland, argued the cause and filed the briefs for petitioner on review. With him on the petition was Karen O'Kasey.

Gordon T. Carey, Jr., Portland, argued the cause and filed the briefs for respondent on review.

LEESON, J.

**LEESON, J.**

In this wrongful death action, defendant contends that the trial court erred by giving a verdict-urging instruction after the presiding juror had informed the court that the jury was deadlocked. The Court of Appeals reversed on the ground that the instruction was coercive. *Schlimgen v. May Trucking Co.*, 178 Or App 397, 410, 37 P3d 1005 (2001). For the reasons that follow, we reverse the decision of the Court of Appeals and remand the case to that court for further consideration.

Plaintiff is the personal representative of Michael Schlimgen, who was killed in an accident near an on-ramp to Interstate 5 south of Portland involving a tractor-trailer driven by defendant's employee. After the parties presented their evidence and arguments, the trial court instructed the jury, and the jury retired to deliberate. The presiding juror thereafter told the court that the jury was deadlocked on the question of the respective percentages of Schlimgen's and defendant's fault. The court then gave the following supplemental instruction to the jury:

> "At this point I want you to be very careful not to say anything that will give any indication of which way your jury is leaning in this divided case. My interest as the trial judge is not in the result that you reach. I told you that as part of the instructions. My interest is in the process that you follow. And of course my interest, as well as your interests and the interests of the parties is to get this case resolved.

> "I appreciate very much that the trial was burdensome upon you, and that burden has extended long beyond any of us—what any of us contemplated or wanted. I'd point out that that alone is a reason not to become angry and upset and not proceed to decide the case. In fact, it's just the reverse. That's a real reason for you to put in the last effort and get this case resolved.

> "Now, if you, on the basis of what you've heard, don't resolve this case, we're going to pick another group of jurors, and we're going to hear this case again. And I would suggest to you that it's doubtful that we're going to find a group of people any more reasonable than you, and it's

doubtful that those jurors are going to be presented with any better evidence to decide these issues than you were presented with. And it's going to be very burdensome collectively on everyone to proceed through this again and find ourselves sitting in exactly this situation with 12 jurors who have a very difficult decision to make in order to resolve this.

"This is a case—a problem that's not going to go away. It's got to be resolved. Now, I'm going to ask you to continue deliberating. I do want you to understand, as I said in the initial instructions, that you should deliberate in the full sense of the word, you should consider the reasoning, the arguments and the opinions of all of the other jurors, and you should be willing to explain to the other jurors the reasoning and arguments that cause you to take the position that you take.

"And I urge you to try to fully understand what the other jurors are saying and doing and why they're doing it, and for you to make every effort to try to explain to them why you're taking the position that you are taking, and that you do this with an open mind and for the purpose of attempting to resolve the questions that remain between you.

"But now I would caution you that while I've talked about the importance of resolving the case, I also want to remind you of the importance of your individual decision in the case. And while it's your responsibility to deliberate and to be open minded and to continually reevaluate your position, and to in fact change your position if you're persuaded, through the deliberations, that your original position was incorrect and that another position is correct, it would not be appropriate for you to sacrifice your honest opinion as to the weight of the evidence or the ultimate result of the case just to reach a verdict. When you do return with a verdict, the verdict has to be one in which you agree.

"Now, I'm going to ask that you return to the jury room, that you deliberate further, that you attempt to resolve this, and we will await to hear from you as to whether you've been successful or not. But I do wish that you speak fully about these instructions and about where you are, not just go in the jury room and turn around and hit the buzzer out of pique, and come back in and say, you know, 'We told

you before, we can't resolve this.' That won't do any of us any good.

"Try to be patient. Now, be cautious not to say anything that's going to let these lawyers have any idea which way your jury is leaning because that's going to make it more difficult for me to proceed with this, if one side or the other perceives the case—perceives themselves to be at a disadvantage, then my difficulties in managing this are going to become much more difficult."

The presiding juror responded that the jury had made significant efforts to resolve the case the previous Saturday and that morning. The trial court then stated:

"Well, I'm not going to be arbitrary. And yes, you did proceed on Saturday, yes, you're proceeding today. It's now two weeks from the time that we started the trial. Collectively we have I don't know how many months of—12—we have several months of time—one—the equivalent of one person working several months, just in the trial, let alone all of the preparation that was made.

"I've spoken to you. If you go back, and you say, 'I listened to what Judge Redding said, and there's no hope, we're not going to settle it,' then I'm not going to jail you. But I'm having this conversation with you because I want you to know that while this is going to be over for you, it is not going to be over for the community. This case will be decided. We will start again. We will pick another jury. We will listen through all of the evidence and the questions, and probably more, because my experience is when cases have to be retried, they do not become less complex. They do not become shorter. They become longer. Everything that was asked before gets asked again, in several different ways.

"We—and if you, as you've said, honestly can't decide the case, then we'll get another group of—start with 30 jurors, we'll winnow through them, we'll excuse some, we'll take others, we'll have alternates. You've been here. Took eight days last time. Going to take that amount of labor and more the next time.

"If you tell me that that's what is necessary because of your views, then I'll respect that, and then we will proceed. But it's a very serious decision to make. The decision not to decide is as important as the decision is to decide the case.

"I'll wait for you. Please give me the courtesy of talking it over, and I'll wait for what you tell me."

Defendant objected to the court's supplemental instruction and moved for a mistrial. The trial court denied defendant's motion. The jury resumed its deliberations, and, later that day, it returned a verdict finding that Schlimgen had been 40 percent at fault and that defendant had been 60 percent at fault in the accident. Defendant filed a motion for a new trial arguing, among other things, that the trial court erred in giving the jury the supplemental instruction quoted above. The trial court denied that motion.

On appeal, the Court of Appeals considered whether to apply its supervisory power to prohibit the verdict-urging instruction that the trial court gave in this civil case. *Schlimgen,* 178 Or App at 406. The court interpreted this court's decision in *State v. Marsh,* 260 Or 416, 490 P2d 491 (1971), to prohibit certain types of verdict-urging instructions in criminal cases because of the prospect that such instructions might coerce the jury.

The Court of Appeals concluded that "the specter of jury coercion is as much a cause for concern in the civil as in the criminal context." *Schlimgen,* 178 Or App at 407. Accordingly, it held that "the rule announced in *Marsh*" prohibiting verdict-urging instructions that are coercive applies "in the civil as well as the criminal context." *Id.* at 406. The Court of Appeals next considered whether the supplemental instruction that the trial court gave was "coercive." *Id.* at 407. In that court's view, to determine whether such an instruction is "coercive" under *Marsh,* a court should take into account a variety of factors regarding the particular wording of the instruction and the factual setting or context in which the instruction was given. *See id.* at 408 (listing factors). Applying that standard, the Court of Appeals concluded that the supplemental instruction that the trial court gave in this case was "improperly coercive" and remanded the case for a new trial. *Id.* at 410.

■        As we discuss more fully below, we agree with the Court of Appeals that the same rule regarding verdict-urging instructions should apply in civil cases as the one that applies in criminal cases. However, we disagree with the Court of

Appeals' reading of *Marsh* and with its decision to apply the rule in *Marsh* retrospectively in this civil case.

In *Marsh*, after deliberating for several hours, the jury sent a note to the court, stating: "Our discussion is six guilty, six not guilty." *Marsh*, 260 Or at 420. The trial court then told counsel that it intended to "call the jury in and instruct them," after which "each side [would] be permitted to take whatever exception it [felt] it should." *Id.* The trial court then gave the jury the following supplemental instruction, without objection:

"Members of the jury, it is now not quite 9:00 o'clock. You have been at work since about 4:30 this afternoon, omitting the dinner hour. The note you have sent in a moment ago indicates that your number stands six for one side and six for the other.

"It is my duty to urge you to reach a decision on this case. This case has to be tried either now or later. It is unlikely that this case will ever be tried by any jury more competent and more representative of the community than yourselves. It is unlikely that the evidence would be any different before any later trial than it was before this one and so it is important that the matter be resolved. Those of you who stand on one side of the question should give respectful attention and consideration to the views of those opposed. And vice-versa.

"None of this, however, should be construed by you as suggesting that I believe that you should not vote any other way than your own conscience based upon the evidence and the instructions in this case. None of us expect you to do anything other than that. But I am sure that you realize along with me that this case should be decided. It ought not to be decided unless it is decided by the appropriate number ten to two and it ought not to be decided unless those ten of you who concur, if you do, each reach your decision honestly base[d] upon the evidence and the law and your own view of the matter; so nothing I say should be taken as meaning that I want any of you to vote other than what your own good judgment dictates. But for the reasons I have mentioned I urge you to go back and to deliberate further and see if you can reach a verdict. You may now be excused to the jury room."

*Id.* The court gave a second supplemental instruction to the same effect later that night. *Id.* at 421. Thereafter, the jury returned a guilty verdict. *Id.* at 422. The defendant did not move for a mistrial. Before this court, although he had failed to preserve the alleged error, the defendant argued that the trial court's supplemental instructions urging the jury to reach a verdict violated his constitutional rights to a fair trial and due process of law. *Id.* at 438-39.

This court began by addressing the defendant's constitutional claim. *Id.* at 437-39. After analyzing case law from several other jurisdictions and considering, in detail, the factual circumstances of the case, the court concluded that the supplemental instructions at issue did not violate the defendant's constitutional rights. *Id.* at 439.

The court then considered whether it should announce a prospective rule regarding verdict-urging instructions. *Id.* at 441-42.[1] The court identified several advantages and disadvantages of verdict-urging instructions. The court agreed with courts in other jurisdictions that held that trial judges should not be "required immediately to accept a jury's first indication of failure to agree without a fair attempt at encouraging agreement." *Id.* at 441. However, the court doubted whether there was "any coherent theory" that would distinguish between appropriate verdict-urging instructions and those that are impermissibly coercive. *Id.* The court expressed concern that, because of the "endless variations" of such instructions and the factual circumstances in which they are given, a rule permitting verdict-urging instructions would be "difficult, if not impossible, for the courts to uniformly administer * * *." *Id.* Finally, the court noted that the "need for economy in judicial administration by discouraging hung juries" must be balanced against "the risk that defendants may be convicted as the result of improper coercion" that results from the trial court's use of verdict-urging instructions. *Id.* at 441-42.

---

[1] The court noted that a verdict-urging instruction commonly is known either as an "Allen charge," after *Allen v. United States*, 164 US 492, 501, 17 S Ct 154, 41 L Ed 528 (1896), or as a "dynamite charge" and is given to encourage deadlocked juries to reach a verdict. *Marsh*, 260 Or at 423.

The court concluded that, in general, verdict-urging instructions "involve[ ] so many 'pitfalls' and [are] such an invitation to error as to cause more trouble in the administration of justice than [they are] worth." *Id.* at 442-43. Nonetheless, consistent with the court's view that, in some cases, trial judges should be able to encourage juries to reach a verdict, the court expressly approved the use of portions of a verdict-urging instruction that the American Bar Association (ABA) had proposed for those cases in which a trial court, in its discretion, "deem[s] it advisable to give some supplemental instruction to a deadlocked jury." *Id.* at 443. The court approved the following instruction:

> "It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict."

*Id.* at 443 n 58.[2] In sum, the rule announced in *Marsh* is that, in criminal cases, a trial court may, in its discretion, give the verdict-urging instruction just quoted. *Marsh* also indicated that other verdict-urging instructions are acceptable so long as they do not depart meaningfully from the instruction just quoted. *See id.* at 444 (terms of ABA-approved instruction "are not to be regarded as graven in stone" (internal quotation marks omitted)).

Although the *Marsh* court confined its analysis to criminal cases, *see id.* at 443 (application in civil context was "question not before this court"), and although the verdict-urging instruction just quoted was adopted with an eye to criminal trials, nothing about the analysis in *Marsh* or that instruction is specific to criminal cases. The *Marsh* court identified three main concerns respecting verdict-urging

---

[2] Uniform Criminal Jury Instruction No. 1023 is substantively identical to the instruction that the court approved in *Marsh*.

instructions: (1) the risk that such instructions might coerce jurors and result in erroneous verdicts; (2) the possibility that a total ban on such instructions might impede the effective administration of justice; and (3) the absence of a "coherent standard" for evaluating whether a particular verdict-urging instruction is proper. *Id.* at 441-43. Those concerns also are relevant in the civil context. Accordingly, we extend the *Marsh* rule, identified above, to the civil context.

■ We turn to plaintiff's argument that the requirement that we now announce should be applied only prospectively. We agree. This court has been "reluctan[t] to prejudice litigants by applying new * * * trial practice requirements to cases tried before the announcement of [those] requirements." *Falk v. Amsberry*, 290 Or 839, 847, 626 P2d 362 (1981). *See also Peterson v. Temple*, 323 Or 322, 918 P2d 413 (1996) (applying prospectively rule regarding mandatory joinder of claims for personal injury and for property damage arising from particular set of facts). Indeed, the *Marsh* court applied the rule that it announced in that case only to future criminal cases. 260 Or at 441. Our extension of that rule to civil cases makes "new" law, and, for the reasons discussed in *Falk* and *Peterson*, it would not be equitable to apply the rule to this case. *See Peterson*, 323 Or at 334 (concluding that "inequitable result [would] occur" if court applied new rule retrospectively). We conclude that the rule that we announce regarding the use of verdict-urging instructions in civil cases should apply prospectively only. It follows that, in this case, the trial court did not commit reversible error by giving a verdict-urging instruction that departed from the instruction that the court in *Marsh* approved for use in criminal cases.

It remains for us to consider whether there is any other principle of law that prohibits the use of the verdict-urging instruction that the trial court gave in this case. Defendant has not identified any constitutional provision, statute, or rule of civil procedure that requires reversal here. As noted, in *Marsh*, this court held that a verdict-urging instruction did not violate the defendant's constitutional rights. 260 Or at 438-39. Defendant does not identify any differences between *Marsh* and this case, either in the wording of the verdict-urging instructions or in the circumstances surrounding those instructions, that indicate that the court's instruction violated defendant's constitutional rights.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further proceedings.