Submitted on remand from the Oregon Supreme Court May 15, affirmed
September 10, 2003

Joseph SCHLIMGEN,
Personal Representative for the Estate of
Michael F. Schlimgen, deceased,
*Respondent,*

*v.*

MAY TRUCKING COMPANY,
*Appellant.*

9803-02267; A107409

75 P3d 903

Gordon T. Carey, Jr., argued the cause and filed the briefs for appellant.

Michael T. Garone argued the cause for respondent. With him on the brief were Karen O'Kasey and Schwabe, Williamson & Wyatt, P.C.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

This case is before us on remand from the Supreme Court. *Schlimgen v. May Trucking Co.*, 335 Or 143, 61 P3d 923 (2003). In our original decision, we held that the trial court erred in denying defendant's motion for a mistrial; that motion should have been granted, we concluded, because the trial court gave the deadlocked jury an improperly coercive verdict-urging instruction. *Schlimgen v. May Trucking Co.*, 178 Or App 397, 410, 37 P3d 1005 (2001). We therefore reversed and remanded for a new trial. *Id.* That disposition obviated our need to address defendant's other assignments of error. The Supreme Court, having granted defendant's petition for review, agreed with us that the prohibition on coercive jury instructions applied in civil as well as criminal cases. *Schlimgen*, 335 Or at 152. It held, however, that this conclusion made new law and "should apply prospectively only. It follows that, in this case, the trial court did not commit reversible error by giving a verdict-urging instruction * * *."[1] *Id.* We therefore must now consider the assignments of error that we did not reach in our earlier opinion.

Those assignments number three: the court erred in refusing to give defendant's requested jury instruction regarding statutory negligence; it erred in denying defendant a fair opportunity to cross-examine one of plaintiff's experts; and it erred in allowing plaintiff's expert to testify a third time after his testimony had twice been struck. We affirm.

The following facts, as we wrote them in *Schlimgen*, provide the necessary background:

"Plaintiff is the personal representative of Michael Schlimgen (Schlimgen), who was killed when a tractor-trailer driven by Kelley, defendant's employee, jackknifed on I-5 near an on-ramp south of Portland. Most of the facts were vigorously contested at trial. This much is undisputed: Schlimgen, a tow truck driver, arrived at a point just south of the southbound on-ramp in order to move a flatbed truck that had skidded off the pavement. Schlimgen parked his tow truck [on the paved shoulder of the road] and started to

---

[1] Plaintiff raised the prospectivity issue for the first time in petition for review to the Supreme Court.

set up a line of orange warning triangles to divert traffic away from the area where he intended to work. Meanwhile, Kelley was driving southbound in the far right lane of I-5. Just before he reached a point where the on-ramp finishes merging into the highway, the driver of a Honda, attempting to enter from the on-ramp, sped up, pulled past Kelley's truck on the right, cut left in front of it, and slowed abruptly. Kelley slammed on his brakes but could not avoid colliding with the Honda, sending it into a spin. At the same time, Kelley's tractor-trailer jackknifed and skidded, rotating 180 degrees before coming to a stop. One or both of the vehicles struck Schlimgen. The Honda crashed into Schlimgen's tow truck. When it was all over, Schlimgen lay dead on the gravel shoulder."

178 Or App at 399. The jury found Schlimgen had been 40 percent at fault and defendant 60 percent. Defendant moved for a new trial, the court denied the motion, and the appeal process began.

## DEFENDANT'S STATUTORY NEGLIGENCE INSTRUCTION

To prevail on its assertion that the trial court erred in not giving a requested instruction, defendant must demonstrate that "the trial court's failure to give the requested instruction probably created an erroneous impression of the law in the minds of the members of the jury" and that the "erroneous impression may have affected the outcome of the case." *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106-07, 957 P2d 147 (1998). Here, defendant argues that the trial court gave a potentially misleading and erroneous "statutory negligence" jury instruction because, although it correctly characterized the legal effect of a statutory violation and it correctly instructed that Schlimgen had a statutory duty under ORS 822.220(2) to activate his truck's warning lights, the court also should have specified that the statute requires that a "tow truck driver's decision to close the lane must be reasonable, and that the tow truck driver must place warning devices before closing the lane." Neither of those alleged failures, however, could have created a prejudicial erroneous impression of the law.

ORS 822.220(2) provides:

"A person commits the offense of failure to take precautions when obstructing traffic with a tow vehicle or wrecker if the person is operating a wrecker or tow vehicle engaged in the salvaging of another vehicle and the operator does not do all of the following:

"(a) Determine that the salvaging operation requires stopping the wrecker or tow vehicle in the roadway.

"(b) Place warning signs or signals as prescribed under ORS 815.070 at a suitable distance in each direction upon the roadway.

"(c) Activate tow vehicle warning lights described in ORS 816.280."

The court properly refused to instruct the jury that the statute imposed an obligation on Schlimgen to make only a reasonable decision to close a lane of traffic. The statute deals with stopping a tow vehicle in the roadway. But as defendant itself characterizes the facts in its brief, Schlimgen did not stop his vehicle "in the roadway" so as to close a lane of traffic; rather, he "parked his tow truck on the shoulder." A diagram in defendant's brief confirms that description. To the extent that Schlimgen closed a lane of traffic, he did so (or was attempting to do so when he was killed) with flares and warning triangles, not with his truck.

Further, nothing in the statute itself imposes a reasonableness requirement. To the extent that such a requirement exists, it does so by virtue of the common-law obligation to act reasonably to avoid foreseeable risk. The court did, in fact, instruct the jury on that duty:

"Common law negligence is the requirement of every person to use reasonable care in everything they do to avoid harming themselves and other people."

The court also instructed, with specific reference to Schlimgen's placement of warning devices:

"In order to properly perform the salvage operation, the operator of the tow truck may close that portion of the main traveled roadway as is reasonably necessary to perform the operation."

Thus, the decision not to instruct on reasonableness as part of the statutory negligence instruction was proper because the statute itself does not impose that obligation, and, even if it did, the instructions, viewed as a whole, instructed the jury to take reasonableness into account. Defendant's proposed instruction would have added only the statement, with respect to placing warning devices, that Schlimgen was negligent unless he was acting as a reasonably prudent person under the circumstances. The difference between that instruction and the ones that were given is insignificant. Thus, even if we were to conclude that ORS 822.220(2) imposed a reasonableness requirement regarding setting warning devices and that the court should have included an instruction to that effect, the court's failure to do so would not have been prejudicial.

Defendant also maintains that the statutory negligence instruction should have informed the jury that a "tow truck driver must place warning devices before closing the lane." The court properly refused to give the instruction. Uncontradicted evidence establishes that, when Schlimgen was killed, he was *in the process* of putting down warning triangles and a helper was putting down flares. The fact that he was killed before he completed that task cannot amount to a violation of ORS 822.220(2). The trial court did not err in refusing to give defendant's negligence *per se* jury instruction.

## DEFENDANT'S OPPORTUNITY TO CROSS-EXAMINE PLAINTIFF'S EXPERT

■ Defendant next argues that it did not have a fair opportunity to cross-examine Shields, plaintiff's accident reconstruction expert witness. During trial, defendant's counsel learned that plaintiff's counsel had given Shields some documents containing information from eyewitnesses concerning where Schlimgen was standing when he was struck—one of the fiercely contested fact issues. Shields did not have those documents with him, and defendant's counsel had never seen them. They included an investigator's summary of statements from three eyewitnesses: Diaz, David Labs, and Jeff Labs. Defendant's counsel sought access to the documents on the theory that they contained information

that would help him discredit the expert's version of the accident. The trial court denied immediate access, telling counsel:

> "[A]t this point * * * I'm going to ask to see all of the materials that ever came into this witness's hand. * * * I'll take a look at them. It's probably going to be post-trial. It might be grounds to grant a new trial if there's important material in there that wasn't disclosed."

After *in camera* inspection of the documents, the court never permitted defendant's counsel to view them, giving rise to a motion to strike Shields's testimony, a motion for a new trial, and a motion for a mistrial, all of which were denied. After trial, the court granted a motion to unseal the documents. On appeal, defendant argues that if it had had them at trial, defendant "could have completely discredited Mr. Shields's testimony."

■     Except by innuendo, defendant does not allege a discovery violation or any other kind of misconduct,[2] nor does it allege that the withheld documents would have helped defendant's counsel cross-examine the eyewitnesses themselves. The gravamen of defendant's assignment of error is that not having the documents deprived it of a "fair opportunity to cross-examine Mr. Shields." We review the court's decision limiting the scope of cross-examination for abuse of discretion. *Rhodes v. Harwood*, 280 Or 399, 402, 571 P2d 492 (1977). Under that standard, we conclude that the court's decision was not error.

In its brief, defendant describes the content of the disputed documents as follows: "[T]he transcribed testimony and witness summaries of these witnesses * * * reveal that they told Liberty Northwest that Mr. Schlimgen was at least 2-3 feet inside the slow lane." That description is not accurate. In fact, the record of Diaz's comments shows that he told the insurer that "the driver of the tow truck [Schlimgen] was also on the shoulder and not on the traveled portion of the freeway"; that a few seconds later he was "perhaps 2 or 3 feet

---

[2] Defendant accuses plaintiff's counsel of ordering Shields to "purge his files." Plaintiff asserts that no such instructions were given and that Shields did not bring the documents because he never relied on them in formulating his theories.

onto the roadway, that is into the right lane of traffic"; that after another few seconds, Schlimgen had caught up with Diaz; that Schlimgen "was actually just west of the road's fog line [*i.e.*, off the roadway] but that he was in and out of the roadway"; and that he was later "into the roadway by perhaps 2 or 3 feet." The report on Diaz's testimony concludes, "It is clear that Mr. Diaz did not actually witness the striking of the deceased nor could he say which vehicle it was which struck the deceased."

The record of Jeff Labs's statement discloses that he told the inspector he "could not tell whether the tow truck driver was into the traveled portion of the roadway at all. * * * He, also, did not observe which vehicle it was that struck Schlimgen * * * nor did he observe Schlimgen at the time of impact." Likewise, the inspector's report states that David Labs "could not tell whether [Schlimgen] was walking on the shoulder of the road or on the traveled portion of the roadway itself. * * * Mr. Labs indicates that he did not see [Schlimgen] being struck and he is not aware of anyone who actually witnessed that." Thus, the missing documents indicated that none of the three witnesses observed where Schlimgen was when he was struck, two of them could not say whether he was ever in the roadway, and one said he was both in it and not in it. Further, Shields testified that, in formulating his theory of the accident, he relied not on any written reports but on the trial testimony of Diaz, Jeff Labs, and David Labs. That testimony, as well as the testimony of other witnesses, was that Schlimgen was not on the roadway. All of the witnesses were subjected to cross-examination by defendant. In those circumstances, we conclude that the court did not abuse its discretion in not releasing the documents after *in camera* inspection.

## DEFENDANT'S OBJECTION TO RECALLING PLAINTIFF'S DAMAGES EXPERT

In its final assignment of error, defendant asserts that the trial court should not have allowed plaintiff to reopen its case and then recall and elicit testimony from an economist serving as an expert witness on damages because the same witness's testimony had twice been struck. We review the trial court's decision for abuse of discretion.

*Hiestand v. Wolfard*, 272 Or 222, 225, 536 P2d 520 (1975). Here, the expert testified and, on defendant's motion, the testimony was struck; he testified again, and again defendant successfully had the testimony struck. After both parties had rested, plaintiff sought the court's permission to recall the expert a third time. Defendant stated:

> "[T]hree chances is beginning to stretch it a little bit for me, and my own client has certain rights too. I—I—I'm not going to say anything more other than the fact that I think that, you know, at some point, our—our rights begin to be a little violated if they continue to have these multiple opportunities to change testimony."

The court allowed the expert to testify. Thereafter, the court told the jury that the expert was being recalled because "of some legal questions on the testimony" and instructed the jury "to disregard the witness'[s] prior testimony. I'm going to strike it from the record just as if it had never been stated, and we're going to start fresh with that witness's testimony today." Even if defendant's objection were properly preserved, we fail to see how allowing the testimony was an abuse of discretion.

Affirmed.